562 F.2d 80
 15 Fair Empl.Prac.Cas. 669, 14 Empl. Prac.
Dec. P 7803
Mary Pat KING, Plaintiff, Appellee,
v.
NEW HAMPSHIRE DEPARTMENT OF RESOURCES AND ECONOMIC
DEVELOPMENT et al., Defendants, Appellants.
Mary Pat KING, Plaintiff, Appellant,
v.
NEW HAMPSHIRE DEPARTMENT OF RESOURCES AND ECONOMIC
DEVELOPMENT et al., Defendants, Appellees.
 Nos. 76-1495 and 76-1506.
 United States Court of Appeals,
First Circuit.
 Heard April 4, 1977.
Decided Sept. 1, 1977.
 
 Donald W. Stever, Jr., Asst. Atty. Gen., Concord, N. H., for New Hampshire Department of Resources and Economic Development, et al.
 Susan H. Frey, Boston, Mass., with whom Martin, Morse & Wylie, Boston, Mass., was on brief, for Mary Pat King.
 Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, MARKEY,* Chief Judge.
 COFFIN, Chief Judge.
 
 
 1
 Plaintiff Mary Pat King applied in 1974, 1975, and 1976 for summer employment with the Hampton Beach Meter Patrol. She had personal interviews in each of the three years with defendant-appellant James Connor, who, as Chief of the Meter Patrol, is primarily responsible for hiring. In each year she was refused employment. In 1975 plaintiff filed charges with the state and federal equal employment opportunity commissions, alleging that she had been refused employment in 1974 and 1975 because of her sex. Both agencies found probable cause to believe her allegations true, but were unable to conciliate the dispute. She then filed suit in district court alleging that she had been discriminated against in all three years on the basis of her sex. See 42 U.S.C. § 2000e-2.
 
 
 2
 The district court, 420 F.Supp. 1317, found that Connor had expressed discriminatory animus toward plaintiff in her May 1974 interview and had discriminated against her in that year by failing to give her application serious consideration. But it found that only in May of 1975 was Connor's refusal to hire plaintiff due to her sex. The court awarded plaintiff back pay for 1975 and, based on its finding that she would have been rehired if she had been hired initially, for 1976 as well. Only defendants appeal from the court's judgment on liability. The court also awarded attorney's fees, see 42 U.S.C. § 2000e-5(k), and plaintiff cross-appeals on the ground that the district court awarded an unreasonably low fee.
 
 I.
 
 3
 We find no merit in defendants' objections to the district court's jurisdiction. See 42 U.S.C. § 2000e-5(e). Since it is clear that the 1975 incident was properly before the district court,[1] and that is the only year for which the district court awarded damages, it is unnecessary to decide whether plaintiff's complaint was properly viewed as alleging "continuing discrimination" covering the entire period from 1974 to 1976. Even if the court did not have independent jurisdiction as to 1974 and 1976, the events of those years were relevant to both liability and damages based on the 1975 discrimination.
 
 II.
 
 4
 The district court found that there were vacancies on the Meter Patrol at the times in question, and that plaintiff was qualified to fill those positions. Defendants argue that the latter finding was clearly erroneous, see Fed.R.Civ.P. 52(a), pointing to the district court's finding that defendant Connor had received information from a past employer that plaintiff had difficulty getting along with fellow workers. But there was also ample evidence to support a finding that at all relevant times plaintiff was a sufficiently reliable and responsible person to be considered "qualified" for the position she sought. Any contrary indications may have been relevant to defendants' case in rebuttal, see infra, but they do not render clearly erroneous the district court's finding that plaintiff was qualified for the position.
 
 
 5
 The district court further found that Connor displayed discriminatory animus toward plaintiff during her 1974 interview by asking whether she could wield a sledgehammer, whether she had any construction industry experience, and whether she could "run someone in", none of which related to a bona fide occupational qualification. Having reviewed the entire record, we cannot say that the court's finding as to Connor's state of mind at the critical times was clearly erroneous. See Fed.R.Civ.P. 52(a). Apart from the mere fact that the questions were asked, we think Connor's rather equivocal testimony lends support to the district court's conclusion on this issue.
 
 
 6
 We also agree with the district court that this showing of discriminatory animus completed plaintiff's prima facie case. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Defendants contend that the district court erred in holding inapplicable the fourth prong of the McDonnell Douglas test, i. e., that after the applicant's rejection the position remained open. The Court in McDonnell Douglas made clear, however, that the listed specifications for prima facie proof would not necessarily apply in different factual situations. 411 U.S. at 802, 93 S.Ct. 1817 n.13. Here, as the district court pointed out, the hiring process was not seriatim rather, applicants were chosen from a pool. Moreover, the employer's discriminatory intent was proved largely by its own words and actions, and not simply inferred from objectively neutral circumstances. See generally B. Schlei and P. Grossman, Employment Discrimination Law 1153-54 (1976). We agree that a prima facie case was made, thus shifting to defendants the burden of showing "some legitimate nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, supra, 411 U.S. at 802, 93 S.Ct. at 1824.
 
 
 7
 The court found that defendants met this burden with respect to 1974,[2] July of 1975, and 1976. It found, however, that the reasons given for not hiring plaintiff in May of 1975 were merely pretextual. We do not think, as defendant argues, that the district court imposed an unreasonable duty on Connor to check with each of plaintiff's prior employers. It merely held that the single negative reference Connor discovered was not the real reason for his refusal to hire plaintiff. In light of the finding of discriminatory animus, which put the burden on defendants at this point, we cannot say that the court's finding of fact was clearly erroneous. Defendants cannot rely on information learned only in July to justify their refusal to hire plaintiff in May; and the reasons given by Connor for preferring Brian Liberty to King are less than compelling.
 
 III.
 
 8
 Plaintiff submitted a motion for costs and fees in the district court which, as summarized by plaintiff on appeal, requested $4,909 for some 132 hours of attorney time. See 42 U.S.C. § 2000e-5(k). The district court is clearly the best judge of what constitutes a "reasonable" fee, and we cannot say that the award of $1,500 for the preparation and presentation of this relatively simple case was unreasonably low.
 
 
 9
 Plaintiff has also submitted a motion for attorney's fees on appeal. Considering the nature of the case, and the presentation of the issues on appeal, the court will award $900 as a reasonable fee on appeal.
 
 
 10
 The judgment of the district court is affirmed. Order for attorney's fees on appeal in accordance with this opinion.
 
 
 
 *
 Of the U.S. Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 We attach no significance to the fact that plaintiff's charges in the state and federal agencies were dated before her May 3 interview. Her testimony indicates that the charges were prepared on the basis of Connor's negative response to her telephone inquiry, and were later amended to reflect the interview and formal letter of rejection
 
 
 [2]
 The court found that in 1974 defendant discriminated against plaintiff by failing to give her application serious consideration, see Gillin v. Federal Paper Co., Inc., 479 F.2d 97 (2d Cir. 1973), but concluded that this discrimination did not result in Connor's refusal to hire plaintiff at that time, since he would have hired the superior male applicant even if King, too, had been a male. We do not understand the court's discussion in this context, at p. 1327 of its opinion, of Connor's practice of hiring fellow teachers. As defendant points out, if plaintiff lost the job because of this practice, no Title VII violation is shown. We find it unnecessary to pursue the matter, however, since the court did find that the fellow-teacher's job qualifications were superior to plaintiff's, and no damages were awarded for 1974