Thomas ZARCONE, Plaintiff-Appellant,

v.

William M. PERRY and James Windsor,
Defendants-Appellees,

Robert J. Anderson and Patrick
Giambalvo, Defendants.

No. 679, Docket 77–7509.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1978.

Decided July 28, 1978.

Arnold B. Firestone, Hauppague (Firestone & Chekenian, Hauppague, N. Y.), for plaintiff-appellant.

Stephen P. Burke, Mineola, N. Y. (O'Brien, Kelly & Rode, Mineola, N. Y.), for defendant-appellant Windsor.

William J. Fullam, Merrick, N. Y. (Curtis, Hart & Zaklukiewicz, Merrick, N. Y.), for defendant-appellee Perry.

Before FEINBERG, MANSFIELD and OAKES, Circuit Judges.

MANSFIELD, Circuit Judge:

The issue upon this appeal is whether appellant, who successfully recovered compensatory and punitive damages in a civil rights action on his own behalf in the Eastern District of New York, is also entitled to an award of attorney's fees under the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988.[1] Chief Judge Mishler denied an award of attorney's fees in the absence of a showing that the suit had advanced the interests of the public or of an identifiable group. Although we do not subscribe to his reasoning, we affirm on other grounds.

Since the background facts are fully set forth in our prior decision in the case, 572 F.2d 52 (2d Cir. 1978), we need only summarize them briefly here. On April 30, 1975, appellee Perry, then a judge of the District Court of Suffolk County, was presiding over an evening session of traffic court. During a break, he dispatched appellee Windsor, a deputy sheriff, to purchase coffee from appellant Zarcone, whose mobile food vending truck had made a stop in front of the courthouse. Dissatisfied with the coffee, which he described as "putrid," Perry ordered Windsor and two others to bring appellant back to his chambers through the crowded courthouse in handcuffs, and then tongue-lashed the vendor, threatening him with legal action and the loss of his livelihood. About an hour later, Judge Perry again summoned appellant before him and sought an admission that something had been wrong with the coffee. However, appellant consistently refused to admit that anything had been amiss. As a result of this incident, appellant alleged that he suffered from anxiety, persistent headaches and stuttering, required treat-

ment in a hospital, experienced marital difficulties, and was unable to work.

Eventually appellant retained counsel under a contingent fee arrangement whereby one-third of any recovery after disbursements would be paid to his attorney, and filed this action. Not surprisingly, he persuaded a jury that the conduct of Judge Perry and Deputy Sheriff Windsor had been without any colorable legal basis and constituted a denial of his right to due process. He was awarded $80,000 in compensatory damages, $60,000 in punitive damages against Perry, and $1,000 in punitive damages against Windsor. Upon an appeal only of the punitive damages award, we affirmed. Under the contingent fee agreement, appellant's counsel became entitled to $46,496.63 out of the recovery.

In the meantime, however, appellant had moved to amend the Bill of Costs to add counsel fees of $53,917.50. On Sept. 30, 1977, Judge Mishler filed his decision denying this motion. After reviewing the origins of the Civil Rights Attorney's Fees Awards Act of 1976, the lower court characterized appellant's action as "basically a tort action for false arrest and imprisonment couched in the language of the constitutional right to due process." He noted that appellant had sought only damages—as opposed to equitable relief the benefits of which might be shared by others—and stated that appellant's action had vindicated the rights of the public generally "[o]nly in a general, indirect sense." Accordingly, he denied appellant's request for counsel fees, concluding, "[I]t is only when plaintiffs advance the public interests by bringing the action that an award of attorney's fees is proper." On appeal, appellant contends that his request for fees was improperly rejected because of the district judge's use of the wrong standard, and that application of the proper standard entitles him

---

1. Section 1988 now provides in pertinent part:
    In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

to an award of counsel fees as a matter of law.

## DISCUSSION

The Civil Rights Attorney's Fees Awards Act of 1976 (the "Act") amended 42 U.S.C. § 1988 to provide that in any action to enforce 42 U.S.C. § 1983 (the Civil Rights Act of 1866), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." This provision was passed in response to the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which held that federal courts may not award counsel fees to successful litigants in the absence either of express statutory authority or the presence of circumstances permitting application of certain very limited exceptions to the "American Rule" against fee-shifting. S.Rep.No.94–1011, 94th Cong., 2d Sess. 1 (1976) (hereinafter *Senate Report*); H.R.Rep.No.94–1558, 94th Cong., 2d Sess. 2 (1976) (hereinafter *House Report*), U.S.Code Cong. & Admin.News 1976, p. 5908; 122 Cong.Rec. S16,251–52 (daily ed. Sept. 21, 1976) (remarks of Senator Kennedy). Although *Alyeska* itself involved environmental law, the Court's reasoning also disapproved the practice of awarding fees to civil rights plaintiffs on the so-called "private attorney general" theory. *See also Runyon v. McCrary,* 427 U.S. 160, 182–86, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

Almost immediately members of Congress recognized that *Alyeska* would produce anomalous gaps and inconsistencies in private enforcement of federal statutes protecting civil rights, since some, but not all, of these provisions explicitly authorized fee-shifting. Bills were introduced in both Houses to remedy the omission, which led ultimately to passage of the Act.

The impetus for attorneys' fees legislation was Congress' concern, substantiated by the testimony of numerous members of the legal community in Senate and House hearings, that private parties would be deterred from enforcement of the civil rights laws unless they could anticipate that success would result in a recovery sufficient to cover their costs, including reasonable attorneys' fees. See *Senate Report* at 2–5; *House Report* at 2–5. *Alyeska* was seen as a significant threat to Congress' heavy reliance on private enforcement as a means of implementing its civil rights legislation.[2]

The *Senate Report* stated:

All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court. *Id.* at 2 U.S.Code Cong. & Admin. News 1976, p. 5910.

In expressly authorizing awards of attorneys' fees in actions to enforce federal civil rights laws that made no express provision for fee-shifting, Congress did not undertake to specify detailed standards governing the propriety or amount of such awards. Rather, as the language of the Act makes clear, this was left to the direction of the district courts in the first instance. The *House Report* stated:

The second key feature of the bill is its mandate that fees are only to be allowed

---

**2.** Indicative of the importance Congress attached to this legislation were the efforts of the bill's sponsors in the Senate to obtain passage of the bill despite a mini-filibuster on the eve of the Senate's adjournment for the 1976 elections, see, e. g., 122 Cong.Rec. S16,478 (daily

ed. Sept. 23, 1976) (cloture motion), and legislative history indicating Congress' intention that the Act apply to all cases pending in the courts at the time of its passage. See, e. g., *House Report* at 4 n. 6.

in the discretion of the court. Congress has passed many statutes *requiring* that fees be awarded to a prevailing party. Again the Committee adopted a more moderate approach here by leaving the matter to the discretion of the judge, guided of course by the case law interpreting similar attorney's fee provisions. . . . The Committee intends that, at a minimum, existing judicial standards, to which ample reference is made in this report, should guide the courts in construing [the Act]. *Id.* at 8 (footnote omitted).

Thus Congress anticipated that courts would exercise their discretion under the Act in a manner consistent with case law that had developed concerning the fee-shifting provisions of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–3(b), 2000e–5(k) and other comparable statutes. This expectation was consistent with the legislation's character as an incremental measure designed to plug gaps in existing statutory authority. For instance, the *Senate Report* approved the Supreme Court's holding in *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam), to the effect that successful plaintiffs in suits for injunctive relief brought under Title II of the Civil Rights Act of 1964 "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." [3]

■ The Act's legislative history is clear that in authorizing awards of attorneys' fees to plaintiffs in civil rights actions Congress was concerned with enforcement not only of the civil rights of the public at large and of identifiable groups but also with the rights of individual plaintiffs. Its goal was to remove financial impediments that might preclude or hinder "private citizens," collectively or individually, from being "able to assert their civil rights," *Senate Report* at p. 2, U.S.Code Cong. & Admin.News 1976, p. 5910. Indeed, we recently remarked in *Davis v. Village Park II Realty Co.,* 578 F.2d 461 (2d Cir. 1978), at 464, that attorneys' fees might be shifted in an individual action for damages under circumstances where it was quite possible that the plaintiff would recover only nominal damages. We therefore reject the view that, to be eligible for shifting of attorneys' fees, the civil rights plaintiff is obligated to show that his action resulted in direct benefits to others, rather than in benefits solely to himself.

Appellant, however, argues that, despite the Act's language making an award of attorney's fees discretionary, he is entitled to such an award as a matter of right under the Supreme Court's decision in *Newman,* which was quoted with approval in the Senate and House Reports on the Act, and *Northcross v. Board of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973). Specifically, appellant points to the Court's statement in *Newman* that the successful civil rights plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," 390 U.S. at 402, 88 S.Ct. at 966, which was followed in *Northcross.* Appellant urges that under this principle, sometimes referred to as the "*Newman-Northcross* Rule," [4] the district court had no choice in this case but to exercise its discretion in his favor, since no circumstances are shown that would counter the *Newman-Northcross* presumption, and because there was evidence that Perry interposed some defenses in bad faith, a contention which

---

**3.** It stated:

It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 [, 88 S.Ct. 964, 19 L.Ed.2d 1263] (1968). Such "private attorneys general"

should not be deterred from bringing good faith actions to vindicate the fundamental rights here involved by the prospect of having to pay their opponent's counsel fees should they lose.

Senate Report at 4–5 (footnote omitted), U.S. Code Cong. & Admin.News 1976, p. 5912.

**4.** Cf. *Fort v. White,* 530 F.2d 1113, 1118 (2d Cir. 1976); *Carrion v. Yeshiva University,* 535 F.2d 722, 727 n. 7 (2d Cir. 1976).

appellees dispute. This necessitates an examination of the meaning and scope of the so-called *Newman-Northcross* rule.

In *Newman* the representative plaintiffs in a class action succeeded in enforcing Title II's ban on racial discrimination in public accommodations in a suit for injunctive relief against several drive-in restaurants and a sandwich shop. The Court stated:

> "When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with law. A Title II suit is thus private in form only. When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.
>
> It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." 390 U.S. at 401–02, 88 S.Ct. at 966 (footnotes omitted).

Plainly, therefore, the holding in *Newman* was a self-conscious effort to give substance to the Congressional purpose of reducing the financial deterrent to enforcement of Title II by private attorneys general. Formulation of that holding in terms of a presumption was appropriate because only a firm assurance that fees would be recoverable could overcome the reluctance to file Title II suits for injunctive relief—which could not possibly pay for themselves—and because successful Title II litigants could invariably be characterized as private attorneys general, vindicating civil rights of broad public interest. In short, absent fee-shifting, it was unlikely that these important rights could be enforced effectively through private lawsuits for injunctive relief.

This rationale was applied in three subsequent Supreme Court cases. In *Northcross v. Board of Education*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973), the Court held that this standard should be applied to requests for fees made pursuant to § 718 of the Emergency School Aid Act of 1972, noting that the "plaintiffs in school cases are 'private attorneys general' vindicating national policy in the same sense as are plaintiffs in Title II actions." 412 U.S. at 428, 93 S.Ct. at 2202. Likewise, in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Court extended the *Newman-Northcross* rule to actions for injunctive relief brought under Title VII, again stating that the *Newman-Northcross* rule would serve to vindicate the public interest in such suits.[5] Finally, in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), a case dealing primarily with the awards of fees to defendants in Title VII cases, the Court reiterated that this rule is not a hard-and-fast interpretation of statutory language, but rather a

---

**5.** Consistent with the reasoning in *Newman* and *Northcross*, we applied the *Newman* presumption in *Beazer v. New York City Transit Authority*, 558 F.2d 97 (2d Cir. 1977), petition for cert. granted, —— U.S. ——, 98 S.Ct. 3121, 57 L.Ed.2d 1146 (1978), a case in which the plaintiffs sought broad equitable relief on behalf of a class as well as limited monetary relief for themselves in the nature of backpay. The cost of the litigation and the consequent benefits to others were plainly disproportionate to the sum that the plaintiffs might reasonably have expected to recover on their own behalf. *Accord, Mid-Hudson Legal Services, Inc. v. G & U Inc.*, 578 F.2d 34, at 35–38 (2d Cir. 1978).

reflection of an attempt to reduce the financial barriers to suits by private attorneys general. 98 S.Ct. at 697–701.

Thus the *Newman-Northcross* rule is not to be applied woodenly without consideration of the underlying factors which generated it. On the contrary, the Supreme Court has made it clear that in determining whether attorneys' fees should be awarded to a prevailing civil rights plaintiff, the principal factor to be considered by the trial judge in exercising his discretion is whether a person in the plaintiff's position would have been deterred or inhibited from seeking to enforce civil rights without an assurance that his attorneys' fees would be paid if he were successful. This was indeed the situation in *Newman* where the plaintiff sought only injunctive relief and, as the Court noted, "cannot recover damages," 390 U.S. at 401, 88 S.Ct. 964. However, where a plaintiff sues for damages and the prospects of success are sufficiently bright to attract competent private counsel on a contingent fee basis, the underlying rationale of the *Newman-Northcross* rule may be inapplicable, since no financial disincentive or bar to vigorous enforcement of civil rights may exist.

██ This is not to say, of course, that in an appropriate case the nature and extent of the rights and interests at stake may not be considered by the trial judge in determining whether to shift attorneys' fees. For instance, when the claim involves civil rights of broad significance, prosecuted on behalf of a large class, and the prospective monetary award, if the suit is successful, would be modest in relation to the time, effort and skill required of counsel, the district court must weigh these factors in determining whether to award fees. In such a case the prospect of an award supplementing the fees that the successful plaintiff might be able to pay would be essential to attract competent counsel. Other factors entitled to consideration are the size of the benefits conferred by the suit on the public or on others, the amount of any fund created by the litigation (and its adequacy to cover the plaintiffs' costs and compensate him for actual damages), the presence or absence of any bad faith or obdurate conduct on the part of either party, and any unjust hardship that a grant or denial of fee-shifting might impose.

██ Applying these principles here, the circumstances clearly call for affirmance of Chief Judge Mishler's denial of an award of attorney's fees. Furthermore, no purpose would be served by a remand for further consideration of the issue since no award would be justified. From the outset it was clear that the prospects for a substantial monetary recovery were good, in view of the clear wrongfulness of the challenged conduct, and the injuries and hospital costs incurred by plaintiff. Thus it was apparent that counsel fees would not present a significant barrier to institution and prosecution of a suit for damages. Indeed, plaintiff obtained competent counsel on a contingent fee basis, apparently without any unusual difficulty. The prosecution of his claim resulted in a judgment totalling $141,000, including $61,000 punitive damages, out of which plaintiff's counsel has received $26,000 and is entitled to a total of $46,496.63 according to the contingent fee agreement.

Moreover, appellant was a private attorney general only in an attenuated sense. Although the defendant's conduct was intolerable from the standpoint of the public interest, it is unlikely to recur, and appellant sued on his own behalf for damages to redress an essentially private injury.[6] Fi-

---

**6.** We do not suggest that a plaintiff who does not proceed by means of a class action or asks for equitable relief may never invoke the standards of the *Newman-Northcross* rule. On the contrary, where an individual suit for damages can be characterized as a test case, involves legal issues of recurrent public importance, or is otherwise imbued with the public interest, the concerns underlying the *Newman-Northcross* rule appear applicable. See, e. g., *Stolberg v. Members of Board of Trustees*, 474 F.2d 485, 490 (2d Cir. 1973) ("[A]n award of counsel fees is necessary to protect against the possibility that other faculty members might be reluctant to engage in activities protected by the First Amendment or might forgo the vindica-

nally, contrary to appellant's contention, there is not a sufficient showing in this record that Perry acted in bad faith in defending this suit to justify a remand in this case. In short, an award of attorney's fees in the present case is wholly unnecessary to achieve the purpose of the Act.

For these reasons, although the district court in our opinion took an overly restrictive view of its function under the Act, a remand for reconsideration is unnecessary,[7] since application of the relevant factors could lead only to the same result.

The order of the district court is affirmed.

tion of their rights to do so in a court of law. Such a result would be destructive of the educational process in a free society.")

Nor are we influenced by the fact that plaintiff's underlying federal constitutional claim might also have served as the basis for a state tort action. As the Supreme Court said in *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), "[§ 1983] is supplementary to the state remedy."

7. In *Newman* the Supreme Court reversed the lower court and directed the entry of an award of fees without remanding for reconsideration by the lower court of its contrary decision in light of the proper legal standards. 390 U.S. at 402 & n. 5, 88 S.Ct. 964.