**FURTADO et al., Plaintiffs,**

v.

**BISHOP et al., Defendants.**

**Civ. A. No. 70–1805–G(A).**

United States District Court,
D. Massachusetts.

Dec. 20, 1979.

## OPINION

ALDRICH, Senior Circuit Judge.*

The court of appeals, following affirmance on the merits of this civil rights action, and reversal of the allowance of prejudgment interest, has remanded (1) for further consideration of counsel fees to be awarded plaintiffs in the district court pursuant to 42 U.S.C. § 1988, and (2) for a determination and award of counsel fees for the appeal. *Furtado v. Bishop*, 1 Cir., 1979, 604 F.2d 80, *cert. den.* —— U.S. ——, 100 S.Ct. 710, 62 L.Ed.2d 672. The court objected that I had failed to articulate and apply the criteria listed in *King v. Greenblatt*, 1 Cir., 1977, 560 F.2d 1024, *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161. While I had a reason for so doing, I believe that it was not a good one. I now proceed to rectify this error, as well as another, and start fresh.

This was an action by two prisoners against prison guards, largely for personal injuries, but with a count for interference with correspondence. It was not a class suit, nor was it for an injunction or for nominal damages to establish a principle, but essentially a tort action seeking monetary damages brought in the federal court under the Civil Rights Act, 42 U.S.C. § 1983. The suit was commenced in 1970, but was not pressed for trial until the court

* Sitting by designation.

did so in 1978, when it was tried to a jury, before me, for five days. Various verdicts against various guards totalled $27,000.[1] I awarded counsel fees calculated at 50% of the recovery. This I still do.

### A. The district court.

The ensuing numbered paragraphs follow *Greenblatt's* itemization.

(1) *Time and labor.* Defendants say that counsel's hour figures for the earlier years are not reliable. Although these figures are only estimates, and are insufficient by present day standards, I have no reason to doubt counsel's good faith attempt at accuracy. I will come to the totals later.

(2) *Novelty and difficulty of questions.* In the district court there were no novel or difficult questions of law. However, the issues of fact were vigorously contested.

(3) *Skill.* Counsel were competent.

(4) *Preclusion of other employment.* There is no indication that counsel renounced more profitable work. *See Lamphere v. Brown University*, 1 Cir., 1979, 610 F.2d 46.

(5) *Customary community rates.* See post.

(6) *Fixed or contingent fee.* Contingent.

(7) *Time limitations.* None.

(8) *Amount involved and the results obtained.* I consider the actual damage award fair. However, plaintiffs also had a claim for substantial punitive damages, which essentially failed. Accordingly, the results obtained, while pleasing, fell short of what was sought.

(9) *Experience, etc., of counsel.* Counsel were well qualified, but rate no exceptional consideration.

(10) *Undesirability of case.* From counsel's personal standpoint this was a desirable case.

(11) *Professional relationship with clients.* A single retainer.

(12) *Awards in similar cases.* I believe the figures I am about to find are within normal limits.

■ The submissions made of record show amounts awarded counsel by other district judge of $60 to $75 an hour (although not, of course, with a full account of the circumstances), and contain affidavits of members of the bar asserting $75 to $100 maximum. Arithmetical application of hourly rates is wrong. *Souza v. Southworth*, 1 Cir., 1977, 564 F.2d 609, 613. It is wrong because different types of work are of different value. *See Lund v. Affleck*, 1 Cir., 1978, 587 F.2d 75, 77–78. It is also wrong because a lawyer's clock is in no way comparable to a taxi-meter. Two lawyers of equal age, experience, and training may, and often do, differ substantially in the number of hours they take to do comparable jobs, not to mention differing qualities of performance. It is doubtless natural for a lawyer who takes five days to try what the court knows many others could do in two, to ask, and expect, the same hourly charge. To accede to this would put a substantial premium on inefficiency. *See Weeks v. Southern Bell Tel. & Tel. Co.*, 5 Cir., 1972, 467 F.2d 95, 98. Such lawyers are not worth the going rate, and courts should not, out of a false fear of hurting their feelings, hesitate to say so; by asking that someone else pay their fees they put themselves on the line. It is bad enough for a party to have his own lawyer's charges increased by unnecessary deposition and trial time; it is worse if he has to pay twice.

I say this more to exercise the opportunity to speak than to criticize present counsel, who, except for duplication, post, did move expeditiously, at least in 1978.

*Summary.*

In their request for fees counsel sought 212 hours at $23 (his then salary) for Mr. Stern in 1970–71 for commencing suit, or

1. The jury, in answer to special interrogatories, awarded Furtado $8,000 for improper physical force and $1,000 for punishment segregation, and awarded Souza $1,000 for improper physi-cal force, $9,000 for punishment segregation, and $1,000 compensatory and $1,000 punitive damages for suppression of mail.

$4,876, and 141.5 hours at $100 for Mr. Stern in 1977–78 for preparation trial and post trial brief, or $14,150, a total of $19,-026; and 59.3 hours at $100 for Mr. Avery for preparation, trial and post trial brief, or $5,930. This came to a total of $24,956, only 10% less than the total recovery. Counsel conceded that their usual billing rate in 1977–78 was $60 an hour. That rate, multiplied by the number of hours, would have produced $12,048 for 1977–78, which, added to $4,876 for 1970–71, would have totalled $16,924, still a very substantial sum.

█ It is difficult to comment on Mr. Stern's time spent in commencing suit, other than to say that it seems presumptively over-large—being equivalent to a full month—even though it includes some minor court work. On the other hand, doubtless there were special problems. More serious is the fact that assistant counsel was added in 1978 for trial. It is true that there were two plaintiffs, but there was no conflict of interest. During long experience on both sides of the bench I have rarely seen a second lawyer who made a major contribution in court in a case where no separate representation was required. Unless there are exceptional trial problems, the claim that two heads are better than one either reflects on the capacity of the first, or concedes a disproportionate contribution of the second.[2] Of Mr. Avery's 59 hours, 29 were in court, where his services appeared, at best, advisory. I realize that it may be

comforting to have someone at one's side, and that two lawyers frequently attend a trial, but this should normally be on a division of fee basis, or with the approval of the client. When one is a compulsory employer,[3] one should not have to pay unnecessary charges, particularly charges produced by duplication of services. *Johnson v. Georgia Highway Express, Inc.*, ante, at 717, quoted with approval in *King v. Greenblatt*, ante, at 1027.

Counsel's disregard of this principle is made only too apparent by their proposed charges for both lawyers for the final day of trial, including "awaiting the verdict until 10 P.M." The case having gone to the jury in the forenoon, the maximum remaining duty was for one attorney to be on call in case he wished to attend if further jury instructions were requested. Counsel seek 10 hours apiece for that day (evidently omitting the lunch and dinner hours), at $100 an hour, for a total of $2,000. The fact that they would make such a request, both in hours and amount, colors my whole thinking.

█ Considering all of these matters, I award $3,000 for 1970–71, to be repaid, as was asserted, to Mr. Stern's 1970–71 employer,[4] plus $12,000[5] for 1977–78, for a total of $15,000. A modest amount to reflect the contingent nature of success, *cf. Lamphere v. Brown University*, ante, has been factored into the hourly figures, but for reasons to be discussed, post, under the

2. "The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." *Johnson v. Georgia Highway Express, Inc.*, 5 Cir., 1974, 488 F.2d 714, 717. I would say the additional lawyer's time may even be disregarded, with a substantial burden on counsel to show the need for and the extent of the assistance. I would not find that burden met simply because counsel divided up the examination of witnesses in the ordinary course. In the absence of some special circumstance, one lawyer is simply resting while the other is working.

3. A question a judge might well ask is whether, if the lawyer were in the marketplace, charging his own clients, he would have requested the fee he is seeking to impose on the involuntary client.

4. A public service employer is entitled to attorney's fees. *Perez v. Rodriguez Bou*, 1 Cir., 1978, 575 F.2d 21, 24. This specific arrangement was entered into by counsel, and does not fall under the interdiction announced in *Lamphere v. Brown University*, ante. On the other hand, since I am cutting down the gross fee, the parties concerned will have to work out an adjustment.

5. It is a coincidence that this latter sum corresponds with the $12,048 figure earlier mentioned. I have averaged out something over $60 an hour for Mr. Stern's time, but have heavily reduced Mr. Avery's hours and hourly rate. It is not possible to be more exact.

heading "Ceiling," I reduce the $15,000 figure to $13,500, being 50% of the recovery. Furthermore, even this award is contingent upon the final judgment.

## B. *The appeal.*

### (1) *Appeal procedure and brief.*

The appellate work, mostly briefing, was divided between three lawyers. Attorney Stern logged 135 hours; Attorney Avery 43 hours; Attorney Shapiro 51 hours.[6] This was a great many hours; something over 200 for the brief itself.[7] However, unlike the district court work, there were a number of questions of law; one that I had found a close question myself, and others, including some raised for the first time on appeal, to which the court of appeals devoted considerable attention. In addition, the facts were important. The portion of the court's opinion discussing the merits ran over 12 pages. Defendants' brief ran over 60 pages, and plaintiffs felt compelled—or at least chose—to use nearly 90 pages to respond. I do not find their brief irrelevant, but one might well think it excessive. Over two hundred hours, some five weeks of work, seems a very long time for efficient brief writing. Although counsel say there was little duplication, I cannot bring myself to think that if only one qualified brief writer had done all of it except for lower echelon legal research, so much time would have been consumed. It is unusual, in my experience, for lead counsel to carry the laboring oar, in terms of time spent, in the preparation of a brief.

Turning to the matter of success, plaintiffs failed to sustain their position on prejudgment interest and on the award of counsel fees. This was a relatively small part of the brief, though a large part of the recovery. Against this, persuading the court on the merits appears not to have been altogether easy.

In the total analysis, making full allowance for counsel's natural desire to write a brief that put their best feet forward, but thinking of the much less extensive briefs customarily filed in the court of appeals no matter how complex the case or how unlimited the client's obligation to reimburse counsel, I do not believe a party should have to pay more than $5,000 for plaintiffs' brief unless it had gained in value by being in support of a much larger verdict.

### (2) *Argument.*

Mr. Stern's 13 hours for preparation and oral argument I have deducted from his 135 hours for appellate work, ante, and charge here at $1,000.

## C. *Ceiling.*

There comes now a troublesome question for which I previously sought a ruling from the court of appeals, but did not receive one, doubtless because the court preferred to wait for a fuller record. This question is whether there should be a ceiling on the fee in a suit such as this, brought for money damages, not to establish some principle or to serve as a public warning beyond the damages themselves. *Cf. Zarcone v. Perry,* E.D.N.Y., 1977, 438 F.Supp. 788, 790–91 *aff'd,* 2 Cir., 1978, 581 F.2d 1039, *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38. The question divides itself into two parts: whether there would have been a ceiling vis-a-vis a contingent fee-paying client, and whether the fee could be higher when charged to a civil rights defendant.

### (1) *Counsel's claim on the client, had there been no statute.*

■ Counsel had no fee arrangement with plaintiffs other than the contingency of what would be awarded by the court under the statute if plaintiffs prevailed. The customary contingent fee understanding, where money damages are the object of the suit, normally provides counsel

---

6. Although Mr. Shapiro's total was stated as "researching and writing" the brief, this figure included 4 hours for "Appearance at argument." How this appearance possibly benefitted the clients does not appear.

7. It is said that, in addition, counsel received an unspecified amount of assistance from law students.

with one third of plaintiff's recovery. Although, as will appear, I believe defendants are ·chargeable only to the extent that plaintiffs would be, I awarded a larger fee against defendants here, in part because counsel did considerable work, and in part because, in a sense, one half of what plaintiffs actually receive is one third of the "recovery." [8] Hereafter, for convenience, I shall use the term "one third rule" in this sense, denoting one third of plaintiffs' gross "recovery." Lawyers have problems enough with public relations without inviting the criticism that I believe would be provoked by repeated fee awards amounting to more than one half of the clients' net receipts. Lawyers are professional service providers, not principals. It is the client, after all, who suffered the pain. If it be said that the client might have recovered nothing but for the lawyer, so, too, counsel would have had no employment had the client not been injured. To put it another way, a lawyer is worth his keep vis-a-vis the particular case and not on some abstract basis computed according to what he feels should be his annual income.[9]

 The one third maximum presumptively applicable to the ordinary case should not be exceeded because of an appeal, at least absent special circumstances. I find nothing to disabuse me of the belief that, where a contingent fee is paid out of the client's recovery, winning the appeal, if there is one, is generally regarded as part of the lawyer's single obligation to prevail in order to recover.

I turn, accordingly, to the question of what departures from a one third rule are appropriate, but I consider this in connection with the second question posed, ante, whether the statute charging the fee to the defendant establishes governing principles different from those that would apply without it.

(2) *Defendants' responsibility.*

 My conclusion is that the statute does not place a larger obligation, nor permit the court in its discretion [10] to place a larger obligation, on the defendant than would have been reasonably chargeable to a solvent plaintiff. Basically, "[a]n award of attorney's fees is compensatory, not punitive . . . ." *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 8 Cir., 1977, 558 F.2d 861, 871; *Perez v. University of Puerto Rico*, 1 Cir., 1979, 600 F.2d 1, 2.[11] The legislative history of section 1988, *see Zarcone v. Perry*, 438 F.Supp., ante, at 792–95, indicates that Congress' concern was that persons whose civil rights had been violated might be deterred from suing by the high cost of representation.[12] The fee award is to be "what it

---

**8.** If the verdict is X, and counsel is awarded an additional ½ X out of defendants' pocket, it may be said that the "recovery" is 1½ X. *Cf. Farmington Dowel Products Co. v. Forster Mfg. Co.*, 1 Cir., 1970, 421 F.2d 61, 88. A fee of ½ X is one third of such recovery. To allow more would seem to require defendant to pay a fee on a fee.

**9.** To state perhaps the obvious, it is not the brilliance of a lawyer that determines the size of his income, but the clients and cases he attracts. This may sound crass, but it is not to be corrected at the clients' expense. Correspondingly, a civil rights plaintiff is not entitled to recover a fee for a particularly expensive lawyer at his usual rates if plaintiff's suit does not require such special qualifications.

**10.** Section 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

**11.** Particularly, I do not read the word "discretion" as giving the court authority to enlarge the fee assessment into a penalty. *Cf. Del Rio v. Northern Blower Co.*, 1 Cir., 1978, 574 F.2d 23. Discretion points in the direction of a refusal to make the award, *Zarcone v. Perry*, 2 Cir., 1978, 581 F.2d 1039, *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38, not in the direction of increasing the amount.

**12.** "[T]he principal factor to be considered by the trial judge in exercising his discretion is whether a person in the plaintiff's position would have been deterred or inhibited from seeking to enforce civil rights without an assurance that his attorneys' fees would be paid if he were successful." *Zarcone v. Perry*, 2 Cir., 1978, 581 F.2d 1039, 1044, *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38.

costs them to vindicate these rights in court." Senate Judiciary Committee Report, S.Rep. No. 94–1011, 94th Cong., 2d Sess. (1976), at 2, 1976 U.S.Code Cong. & Admin.News, pp. 5908, 5910, quoted in *Sargeant v. Sharp*, 1 Cir., 1978, 579 F.2d 645, 648. While, as the court said in *Sargeant*, at 648 (quoting Senate Report, at 6, 1976 U.S.Code Cong. & Admin.News, p. 5913), the fee award is "to attract competent counsel," I do not read this language to mean that Congress intended that every person who could claim an invasion of civil rights, no matter how minor, would be entitled to retain counsel at the defendant's expense, no matter how great. There must be an element of reason; the fee must not be such as to encourage the overpressing of marginal claims, a by no means idle fear.[13]

There is also an element of hindsight. As the court pointed out in *Farmington Dowel Products Co. v. Forster Mfg. Co.*, 1 Cir., 1970, 436 F.2d 699, at 701, since the court determines the fee after the event, the question is "what amount it is ethical to receive, not . . . what share it is ethical to agree upon." I do not read this to mean that there should not be a maximum limit. Rather, I believe there normally should be a limit, with exceptions in unusual cases. Of course, as the court indicated in *Furtado*, 604 F.2d, ante, at 98, there should be no blind application of a "formula [which] would work obvious injustice in cases where damages were nominal or only injunctive relief was sought, or in cases where recovery was large and out of proportion to the work done . . . ." The present case falls within neither exception. Denying excessive fee awards is necessary to avoid "invit[ing] . . . public cynicism which can only undermine the

ideals which the main litigation sought to promote," *Souza v. Travisono*, 1 Cir., 1975, 512 F.2d 1137, 1141, *vacated and remanded on other gr'ds*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29. Accordingly, I find $13,500 should be the maximum award in the present case, and so allow.

I would feel differently about imposing this limit on the fee award if this had been a frivolous appeal, which, independently of 42 U.S.C. § 1988, would have warranted charging defendants with counsel fees. *See F. D. Rich Co. v. United States*, 1974, 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703; F.R.A.P. 38. Sitting as a district court judge, *Souza v. Southworth*, 1 Cir., 1977, 564 F.2d 609, 614, I do not consider the appeal to call for such. On the other hand, the existence of this possibility is sufficient reason for not departing from the findings and principles hereinabove stated.

Finally, a word of caution. I have used the terms "one third rule" and "recovery" broadly. This opinion does not mean that I subscribe to a rule of thumb in that amount. In a case involving less work I would consider one third to mean one third of the verdict, not one third of the verdict plus the fee.

---

**13.** This, to me, is the thrust of *Perez v. University of Puerto Rico*, 1 Cir., 1979, 600 F.2d 1. There the court recognized that where the damages were only nominal the fee could not be measured thereby, but, at the same time, stated that the absence of damages was an important factor in considering the worth of the case. Plaintiffs may rely on *Campiti v. Walonis*, D.Mass., 1979, 467 F.Supp. 464, *aff'd*, 1 Cir., 1979, 611 F.2d 387, which allowed a large fee on a small recovery, but *Campiti* was decided prior to *Perez*, and in any event would appear to involve principles of broad public significance rather than mere pursuit of money damages, *see* ante. The question of the fee was not raised on the appeal in *Campiti*.