Horace L. PATTERSON et al.

v.

YOUNGSTOWN SHEET AND TUBE COMPANY and Local 6, Bricklayers, Masons and Plasterers International Union of America, AFL–CIO.

No. 71 H 301.

United States District Court,
N. D. Indiana,
Hammond Division.

May 30, 1980.

Leroy P. Vital, Earl B. Williams, Chicago, Ill., Frederick T. Work, Gary, Ind., for plaintiffs.

Bernard M. Mamet, Lawrence Summers, Chicago, Ill., Joseph E. Costanza, East Chicago, Ind., for defendants.

MEMORANDUM

SHARP, District Judge.

This will briefly state the separately entered findings and conclusions in regard to

the allowance of counsel fees for plaintiffs' counsel in this case.

On April 21, 1980, one of plaintiffs' attorneys, Leroy P. Vital, submitted a motion requesting an award of attorney fees in the amount of $371,100.00 for services allegedly rendered by him in this case since July 1974. Also on April 21, 1980, another of plaintiffs' attorneys, Earl B. Williams, submitted a motion requesting an award of attorney fees in the amount of $169,312.50 for services allegedly rendered by him in this case since May 10, 1976. On May 2, 1980, plaintiffs' former counsel, Marion W. Garnett, submitted a motion requesting an award of "at least $150,000.00" for services allegedly rendered by him prior to April 1974. Frederick T. Work has not submitted any claim for fees as of this date. The fees requested by the above three attorneys who represented plaintiff is, however, in excess of $690,000.00.

Section 706(k) of Title VII U.S.C. § 2000e–5(k), which is the sole controlling statutory provision, states as follows:

(k) In any action or proceeding under this subchapter the court, *in its discretion*, may allow the *prevailing party*, other than the Commission or the United States, *a reasonable attorney's fee as part of the costs*, and the Commission and the United States shall be liable for costs the same as a private person. (emphasis added)

■ Section 706(k) expressly leaves the issue of whether attorney fees should be awarded in any particular case to the sound discretion of the district courts. The Court of Appeals for the Seventh Circuit has repeatedly confirmed that generally all decisions with respect to the amount of fee awards are "a matter committed to the discretion of the trial court." *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1063 (7th Cir. 1975); *Waters v. Wisconsin Steel Works of International Harvester Co.*, 502 F.2d 1309, 1322 (7th Cir. 1974), *cert. den.*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976); *Bond v. Stanton*, 555 F.2d 172 (7th Cir. 1977); *Brown v. Stanton*, 617 F.2d 1224 (7th Cir. 1980); *Muscare v. Quinn*, 614 F.2d 577 (7th Cir. 1980); and *Dawson v. Pastrick*, 600 F.2d 70 (7th Cir. 1979). See also, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 716–7 (5th Cir. 1974).

■ In their motions and memorandum, plaintiffs' attorneys argue that the Court should base a fee award upon a single narrow ruling of liability against Youngstown which resulted in a small amount of back pay, and at the same time order "multiplied" fees in excess of $690,000.00 for all hours allegedly spent in connection with any aspect of this case, even though Youngstown and not plaintiffs had its position sustained on several other aspects of this case. This is simply not a case where a multiplier is justified or permitted.

Section 706(k) of Title VII expressly requires that a party must "prevail" in his claims before he may receive any award of fees. Moreover, in *Williams v. General Foods Corp.*, 492 F.2d 399 (7th Cir. 1974), the Court of Appeals for the Seventh Circuit in construing Section 706(k) held at 409:

. . . As a general guideline, the amount of an award of attorneys' fees should be proportionate to the extent to which the plaintiff prevails in the suit. *Schaeffer v. San Diego Yellow Cabs, Inc.*, supra, 462 F.2d [1002] at 1008. In this case, as we have noted, the circumstances indicate that the district court would be warranted in denying all the relief which Williams requested. It would follow that the denial of an award of attorneys' fees would not be an abuse of discretion.

In *Roesel v. Joliet Wrought Washer Co.*, 596 F.2d 183 (7th Cir. 1979), the Seventh Circuit also denied any award of fees holding at 187:

Each .party prevailed to some extent. Plaintiff prevailed in establishing discrimination against her on account of sex and is recovering back pay for a two year period based on a $2,000 differential. Defendant prevailed in defeating her claim that Scholtes was hired to perform the same job at a $7,000 per year differential and that she was terminated or justifi-

ably quit as a result of discrimination...
Under the circumstances, with each party
prevailing in some part, it seems sound to
award fees to neither.

*See also, e. g., Adams v. Reed,* 567 F.2d
1283, 1287–88 (5th Cir. 1978); *Taylor v.
Franklin Drapery Co., Inc.,* 443 F.Supp. 795,
797–98 (W.D.Mo.1978); *Taylor v. Goodyear
Tire & Rubber Co.,* 6 FEP Cases 672 (N.D.
Ala.1973), where the district court stated at
673:

> Plaintiffs seek an award for all efforts,
> successful and otherwise ... The stat-
> ute provides for fees to the prevailing
> party and with respect to these issues
> plaintiffs did not prevail. It is as if these
> two issues had been brought in a separate
> suit and defendants had prevailed. Un-
> der such circumstances the Court would
> not be entitled to award fees for that
> effort. The fact that these contentions
> were coupled with two other theories on
> which success was obtained does not
> change this result. The Court is of the
> opinion, therefore, that the unsuccessful
> efforts have to be entirely disregarded.

Furthermore, in *Brown v. Stackler,* 612
F.2d 1057 (7th Cir. 1980), the Seventh Cir-
cuit very recently confirmed that the dis-
trict court properly denied any fee award.
The Seventh Circuit stated in part:

> ... under the District Court's order of
> April 4, 1977, enjoining enforcement of
> the statute, leave was given to file a
> petition for attorney's fees.
>
> It was then that appellants' counsel
> submitted a claim which was so intoler-
> ably inflated that the District Court was
> warranted in departing from the usual
> practice and reacting vigorously to pre-
> vent such abuse of the court's authority
> to award reasonable compensation to
> counsel.
>
> Appellants' counsel claimed over 800
> hours of billable time. Manifestly it was
> utterly unreasonable to expend that
> amount of time on a plain and simple
> case ... The District Court, finding ap-
> pellants' claim outrageously excessive, de-
> nied fees entirely. Such denial is an en-
> tirely appropriate, and hopefully effec-

> tive, means of encouraging counsel to
> maintain adequate records and submit
> reasonable, carefully calculated, and con-
> scientiously measured claims when seek-
> ing statutory counsel fees.
>
> As previously noted, the applicable
> statute provides that the court in its dis-
> cretion may allow counsel fees. As Chief
> Justice Thomas MeKean of Pennsylvania
> once remarked on a memorable occasion
> "may" sometimes means won't....
>
> The statute here involved entrusts to
> the District Court discretion to determine
> the *quantum* of the fee to be awarded.
> Small as well as large fees are permissi-
> ble. The court's decision to determine
> the amount may in an appropriate case
> approach zero as a limit. Where, as here,
> the claim is obviously inflated to an intol-
> erable degree, the remedy is plain, and
> the District Court properly pursued it.
>
> If, as appellant argues, the Court were
> required to award a reasonable fee when
> an outrageously unreasonable one has
> been asked for, claimants would be en-
> couraged to make unreasonable demands,
> knowing that the only unfavorable conse-
> quence of such misconduct would be re-
> duction of their fee to what they should
> have asked for in the first place. To
> discourage such greed a severer reaction
> is needful, and the District Court re-
> sponded appropriately in the case at bar.
> 612 F.2d 1057

■ In this case, plaintiffs have not pre-
vailed against Youngstown on any matter
other than a motion for summary judgment
as to liability covering a single employment
practice. This Court's entry of partial sum-
mary judgment in favor of Youngstown on
May 12, 1977 disposed of defendants' liabili-
ty with respect to many other employment
practices affecting the more than 8,000 per-
sons in the United Steelworkers bargaining
unit at Youngstown, as compared to the
single employment practice involving 55
members of the class represented by plain-
tiffs. However, the teaching of *Dawson v.
Pastrick,* 600 F.2d 70 (7th Cir. 1979), would
appear to indicate that the plaintiffs pre-
vailed on enough issues to trigger an award
of some fees to counsel for plaintiffs.

In *Waters v. Wisconsin Steel Works of International Harvester Co., supra,* 502 F.2d at 1322, the Seventh Circuit established the standard with respect to fee awards in Title VII cases, stating:

In fashioning a method of analysis to assist in determining the amount of attorney fees properly to be awarded in a Title VII action, we cannot subscribe to the view that attorney fees are to be determined solely on the basis of a formula applying "hours spent times billing rate." ... Other elements to be considered are set out in the Code of Professional Responsibility as adopted by the American Bar Association:

"Factors to be considered as guides in determining reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent."

Disciplinary Rule 2–106.

The Code of Professional Responsibility clearly reflects that an award of attorney fees involves the coalescence of many considerations including the reasonableness of the time spent by counsel, the extent of counsel's success, and the complexity of the case. An analysis by the district court which encompasses the foregoing considerations is most assuredly an analysis well within the bounds of trial court discretion.

Plaintiffs' attorneys in their Memorandum make arguments based upon other standards applicable under other statutory provisions and with regard to fee awards typically after appeal and arising from securities litigation where a shareholder's attorney who succeeds in establishing a settlement or recovery fund is awarded a fee out of that fund itself and not an additional amount directly from the defendant.

There are serious deficiencies in the record to justify the awarding of the full amounts requested by plaintiffs' counsel. Some of these defects are:

(a) Plaintiffs' attorneys suggest that they should receive a fee of $450 per hour without any showing as to the normal hourly rate they otherwise receive in their practice.

(b) A serious deficiency in the record revolves about the fact that plaintiffs' attorneys have submitted more than 60 pages of vague, duplicitous, unexplained and undifferentiated "time entries" claiming more than 1,750 hours of work in pursuit of this litigation. Among those "entries" are an apparent claim for 4¼ hours and $1,912.50 for Mr. Vital to prepare and file his substitution as attorney for plaintiffs.

(c) Several charges for simply filing documents, such as that of Mr. Vital in the second week of September 1975 of 4 hours and $1,800 for filing notice of deposition documents which apparently had already been charged at about 9½ hours and $4,275 for their preparation. Other illustrative charges for the mere "filing" of documents already prepared include claims for $787.50 (9/30/75), $675.00 (10/1/75), $1,125.00 (10/31/75), $1,012.50 (6/1/79), and $900.00 (7/2/79)—a total of $6,300.00 simply to file six documents in this case. Further, other entries present claims for impossibilities, such as that of February 3, 1976 for $675.00 allegedly to have prepared and filed notices of depositions which had already occurred more than three months earlier in 1975 and for which charges had already been claimed at that time. Mr. Vital also claims 3½

hours and $1,575 for having attended a seminar on 9/25/76, and 5 hours and $2,250.00 on 1/22/75 for his secretary having prepared and mailed certain notices. (By way of example only, Mr. Williams similarly claims $1,125.00 merely to file a motion on October 10, 1978; and Mr. Garnett states his time to claim 200 hours of undocumented "meetings . . ., office conferences, letters and phone calls and travel, etc.," plus such items as a claim for 11 hours of time in November 1971 to prepare and file stipulations for extensions of time.) Finally, many of the claimed "entries" which can be attributed to any particular aspect of this case refer to the many motions and demands upon which plaintiffs clearly and absolutely did not prevail.

In addition to the Seventh Circuit's decision in *Waters, supra,* many other courts have refused to sanction efforts at making unsubstantiated claims for fees. In *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717, the Fifth Circuit stated:

> . . . The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted. It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by nonlawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

It should be noted that *Johnson* was cited with approval in *Dawson v. Pastrick.* See also, *e. g., Reynolds v. Wise,* 375 F.Supp. 145, 152 (N.D.Tex.1974), where the district court reduced an award based upon his observation of the much lesser time required of him and his law clerk to have researched and tried the case; *King v. New Hampshire*

*Department of Resources and Economic Development,* 562 F.2d 80, 83-4 (1st Cir. 1977), where the Circuit Court approved a final fee award which amounted to only $11.83 per hour for the time claimed by the plaintiff's attorney because the trial court is the best judge of what efforts are reasonably necessary and it could not be determined that he had abused his discretion in that regard. And compare: *Stevenson v. International Paper Co.,* 432 F.Supp. 390 (W.D. La.1977), where the district court awarded less than $10,000 to the plaintiffs' counsel who had managed this landmark class action case by himself with "great skill, aplomb, patience and persistence [and] obtained remarkable results"; or *Younger v. Glamorgan Pipe & Foundry Co.,* 418 F.Supp. 743, 790-95 (W.D.Va.1976), remanded for reconsideration as to liability in light of *Franks v. Bowman Transp. Co. and Teamsters v. U. S.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444, *Younger v. Glamorgan Pipe & Foundry Co.,* 561 F.2d 563, 565 (4th Cir. 1977), where the district court made many observations about "duplication of effort," "efforts to enlarge the class beyond that which was originally found," and a lack of timely and efficient presentation of the case. Based upon all these factors, the court in *Younger* awarded only $21 per hour for documented time and efforts.

Recently a distinguished and experienced Senior Circuit Judge, Bailey Aldrich, sitting as a district judge, was called upon to make a lengthy and detailed analysis of a claim for attorney fees under 42 U.S.C. § 1988 which involves parallel considerations to the claim made here. See, *Furtado v. Bishop,* 84 F.R.D. 671 (D.Mass.1980). Although not a binding precedent here, the concerns there expressed by Judge Aldrich are concerns relevant here.

█ In this case, the duplication of efforts by plaintiffs' attorneys is evident. This was not a factually or legally complex case. It involved no novel legal issues, and no extensive trial work. All issues of liability were determined by means of motions.

Plaintiffs' attorneys have not attempted to separate out the time actually and reasonably spent in pursuit of the sole issue upon which they have received a favorable ruling against Youngstown.

Further, plaintiffs' attorneys' asserted "multiplier" and "bonus" concepts do not even apply to this case. Plaintiffs' attorneys' requests for more than $690,000.00 in fees is unwarranted on the basis of the record.

The separately entered award of fees and costs is the result of a careful review of the record here and on the basis of the legal authorities here cited.

## ORDER

The Court now awards attorney fees to counsel for the plaintiffs as against only the defendant, Youngstown Sheet and Tube Company. The basis and analysis in regard to same is found and presented in a separately entered memorandum. No fees are awarded as against the Union. Every doubt has been resolved in favor of the plaintiffs in making this award.

The award is as follows:

| NAME | HOURS | RATE | AMOUNT |
|------|-------|------|--------|
| 1. Marion W. Garnett | 250 | $60.00 | $15,000.00 |
| 2. Leroy B. Vital | 500 | $60.00 | $30,000.00 |
| 3. Earl B. Williams | 250 | $50.00 | $12,500.00 |
| | | TOTAL FEES | $57,500.00 |

All taxable costs are also awarded to the plaintiffs and against the defendant, Youngstown Sheet and Tube Company, and same will be assessed and fixed under the regular procedure regarding same.