Vincent KERR, Plaintiff-Appellant,

v.

John QUINN and Joseph Ruggiero, Officers in the Hamden Police Department individually and in their official capacities, Defendants-Appellees.

No. 34, Docket 82–7244.

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 1982.

Decided Nov. 4, 1982.

Alfred J. Onorato, New Haven, Conn. (Joseph D. Garrison, Garrison, Kahn, Crane & Silbert, New Haven, Conn., of counsel), for plaintiff-appellant.

William P. Meehan, Asst. Town Atty., Hamden, Conn. (Harold C. Donegan, Sperandeo, Weinstein & Donegan, New Haven, Conn., of counsel), for defendants-appellees.

Before FEINBERG, Chief Judge and OAKES and WINTER, Circuit Judges.

RALPH K. WINTER, Circuit Judge:

Following a successful civil rights action against two Hamden, Connecticut, police officers, brought in the United States District Court for the District of Connecticut, Zampano, *Judge*, plaintiff-appellant Kerr applied for an award of counsel fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (1976). Judge Zampano denied his request and Kerr appeals.

We reverse and remand.

## BACKGROUND

On December 4, 1976, Kerr was arrested in Hamden, Connecticut, and charged with a variety of crimes including driving while intoxicated. Prior to trial, all but the

drunk driving charge had either been dropped or dismissed. Kerr was tried before a jury on the sole remaining charge and acquitted.

Following his acquittal, Kerr sued Hamden police officers John Quinn and Vincent Ruggiero, individually and in their official capacities, for violation of his civil rights under 42 U.S.C. § 1983 (1976). Kerr claimed he had been falsely arrested and imprisoned as well as physically assaulted. Defendants denied the allegations. The jury awarded Kerr $40,000 in compensatory damages and $20,000 in punitive damages. Defendants then moved for a new trial and Kerr applied for attorney's fees. Judge Zampano was prepared to grant a new trial if Kerr refused to remit $10,000 of his compensatory damages and $6,000 of the punitive damages. Kerr accepted the remittitur.

The motion for attorney's fees was denied. Relying on *Zarcone v. Perry,* 581 F.2d 1039, 1044 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), Judge Zampano noted that "[t]he principal factor to be considered on the question of fee-shifting is 'whether a person in the plaintiff's position would have been deterred or inhibited in seeking to enforce civil rights without an assurance that his attorney's fees would be paid if he were successful.'" Ruling on Defendants' Motion for a New Trial and Plaintiff's Application for Attorney's Fees, March 15, 1982, at 9. In applying this standard, the District Court reasoned that Kerr, "like *Zarcone,* had certain strengths that made the prospects for a substantial monetary recovery excellent." *Id.* at 10. Of particular relevance was Kerr's "well-educated and cultured" appearance as well as his "fine work record, strong family ties, and no history of prior confrontations with police." *Id.* Judge Zampano also thought the case strengthened by "an incontrovertible police record which attested to the lack of proper and customary police procedures, a transcript of the defendants' testimony under oath in the state criminal trial, which demonstrated almost as a matter of law that the police officers' arrest lacked probable

cause, and the availability of a third party witness, Mr. Santillo, who supported Mr. Kerr's version in several crucial respects." *Id.* Finally, he noted that he had recommended a "rather high settlement" and had cautioned that a "'substantial recovery' was probable." *Id.*

## DISCUSSION

Although a denial of attorney's fees should be overturned only if the district court abused its discretion, *Robinson v. Kimbrough,* 620 F.2d 468 (2d Cir.1980), the latitude afforded trial courts in exercising that discretion is narrowed by a presumption that successful civil rights litigants should recover an attorney's fee unless special circumstances would render such an award unjust. *See* S.Rep. No. 1011, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912; *see also New-man v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam). The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel. Where the merits of a claim are obviously strong and would be so recognized by local counsel and where the probable damage award is high and would be so recognized by counsel, a district court has discretion to deny an application for counsel fees. This is so because counsel in such cases can be easily obtained on a contingent basis. Since the principal statutory purpose is not served by an award in those circumstances, the addition of counsel fees to a judgment may be considered unjust and denied by the district court.

The district court's discretion to deny fees begins, therefore, only after an initial determination that the plaintiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily retained. Only after this threshold has been crossed may a district

court proceed to the second step and exercise discretion to deny counsel fees if it believes an award would work an injustice.

In dealing with an application for attorney's fees under the Civil Rights Attorney's Fees Awards Act, district courts should thus employ a two-step process. The first step, determination of the ease with which counsel can be retained to handle cases similar to the plaintiff's, is not resolved simply by the fact that in the actual case counsel was retained and a substantial judgment recovered. Rather, the court must determine whether attorneys who generally take such cases on a contingent basis would readily appreciate the value of the case and agree to pursue it. The test is thus objective, turning on the likely response of the bar, rather than subjective, turning on the district judge's own view of the merits. Similarly, the actual response of one lawyer, who may be more perspicacious, optimistic or risk-taking than lawyers generally, is also not dispositive.

Moreover, the likely response of the bar is to be determined in light of the posture of the case at the time counsel is sought, not in the light of hindsight. The statutory purpose of encouraging the bringing of meritorious claims is not furthered by denying attorney's fees in cases which happen to turn out well for plaintiffs without regard to the initial risk. That the witnesses in plaintiff's main case avoid major pitfalls during cross-examination and a seemingly sound defense goes sour are not facts which can be counted upon by attorneys deciding months or years before whether or not to take the case.

Only if the district court determines that the plaintiff's case would have been perceived as likely to succeed and result in a substantial recovery, may it go on to the second step. Since such a determination assures that a denial of counsel fees will not act as a deterrent to the bringing of meritorious claims, the court may then exercise its discretion as to an award of counsel fee. Here, the issue is whether, in light of all of the circumstances and the size

of recovery, an award of such fees might work an injustice. Since it is the district judge who is most familiar with all facets of the case, this decision is largely within his or her discretion and will turn on the usual factors such as the award of punitive damages, the amount of compensatory damages, the degree and measurability of harm to the plaintiff, and the public interest in the particular claim. Where an award of counsel fees would be something of a windfall to a plaintiff and a significant penalty to a defendant, such an award may be denied. Since most damage judgments awarded by juries in these cases are modest, Newman, *Suing the Law Breakers: Proposals to Strengthen § 1983 Damage Remedy for Law Enforcers' Misconduct,* 87 Yale L.J. 447, 465 (1978), and since the number of cases which pass the first stage determination will thus not be large, denials of counsel fees in those cases where an award would work an injustice will be relatively infrequent.

While our cases have not spelled out this two-part test in so many words, we believe that on the whole, that is the standard we have applied. In *Zarcone,* we affirmed the District Court's denial of attorney's fees where the conduct involved was egregious and obviously illegal, the plaintiff's evidence of that conduct appears to have been quite strong, and the jury awarded $80,000 in compensatory damages and $60,000 in punitive damages. After thoroughly reviewing the legislative purpose of the Act, we concluded that

> where a plaintiff sues for damages and the prospects of success are sufficiently bright to attract private counsel on a contingent fee basis, the underlying rationale of the ... rule may be inapplicable since no financial disincentive or bar to vigorous enforcement of civil rights may exist.

*Id.* at 1044. Although we referred to the "public" benefits of the suit as a factor in favor of fees, we explicitly declined to foreclose awards where an individual successfully sues for equitable relief. Thus, while Zarcone was principally redressing an "essentially private injury," the controlling

reason for denying fees was that the denial of an award did not "present a significant barrier to institution and prosecution of a suit for damages." *Id.* Having passed the first step, we then affirmed Judge Mishler's discretionary decision to deny fees, an understandable act in light of the $60,000 punitive damage award.

In subsequent cases, fees have been allowed where the record would not support a first step determination as to positive economic incentives. *Milwe v. Cavuoto,* 653 F.2d 80 (2d Cir.1981), reversed a denial of fees on the view that the lower court had given controlling effect to the private nature of plaintiff's case and had thus ignored the "principal" factor in making an award, *viz.,* whether a "similarly situated plaintiff would be deterred from enforcing his constitutional rights." 653 F.2d at 83. Since the initial likelihood that Milwe would have been able "to obtain a substantial recovery ... was not great," *id.,* this Court reversed and remanded for an award of fees. This analysis has been recently repeated and reaffirmed. *See Wheatley v. Ford,* 679 F.2d 1037, 1040 (2d Cir.1982). In *Milwe* and *Wheatley,* therefore, the plaintiffs were awarded counsel fees because their cases were not sufficiently strong to support a finding that similarly situated persons would be easily able to retain counsel.

▇ Applying the standards described above, we believe the record in the present case does not support a finding that Kerr's claim was so strong that counsel might be easily and readily retained in similar cases. Viewed through the eyes of prospective counsel at the time counsel was sought, Kerr's claim had major weaknesses. While we might agree with Judge Zampano's view that the evidence available "demonstrated almost as a matter of law that the ... arrest lacked probable cause," Ruling on Defendants' Motion for a New Trial and Plaintiff's Application for Attorney's Fees at 10, prospective counsel would have to take into account the fact that the sole judge to hear this evidence at the time had found it sufficient to allow the drunk driving charge to go to the jury. That fact would surely temper whatever optimism the evidence might otherwise engender as to future rulings by other judges. Moreover, the "third party witness" whose availability played a role in Judge Zampano's reasoning was in fact called by the defense, the testimony helpful to plaintiff being elicited on cross-examination and only after the witness had opined on direct that Kerr was driving while drunk. Since the value of this testimony to plaintiff was apparent only through hindsight, it is not relevant to the first step determination.

The record indicates that the value of Kerr's case increased substantially as the trial proceeded. Judge Zampano later stated that it got "stronger by the minute," Hearing on the Issue of Attorney's Fee Arrangement, January 25, 1982 at 14, and the defendants' offers of settlement during trial increased steadily, but even then only to $7,500. Judge Zampano is an adept, experienced trier and settler of civil rights cases, yet his pre-trial settlement figure here was only $3,000. While that figure was arrived at before he knew that Kerr was "well-educated and cultured" with a stable family life and spotless record, it still reflects the fact that the plaintiff's case had major weaknesses and was heavily dependent upon a favorable credibility determination by the jury. We think the risk was sufficient to preclude a finding that in similar cases counsel might be readily and easily obtained.

The case is reversed and remanded for an award of counsel fees.