John S. HERRINGTON, David S. Herrington, and Quail Hill Ranch, a partnership, Plaintiffs–Appellees–Cross–Appellants,

v.

COUNTY OF SONOMA,
Defendant–Appellant–Cross–Appellee.

Nos. 86–2620, 86–2728.

United States Court of Appeals,
Ninth Circuit.

Aug. 22, 1989.

Before CHOY, SNEED and TANG, Circuit Judges.

## ORDER

John and David Herrington (the "Herringtons") seek an award, pursuant to 42 U.S.C. § 1988, for attorney's fees and costs incurred in opposing an appeal in this court by the County of Sonoma (the "County") from a judgment in favor of the Herringtons in their 42 U.S.C. § 1983 action. The Herringtons also seek fees and costs incurred in opposing the County's petition for certiorari before the Supreme Court.

1. The facts of the underlying litigation are set

## BACKGROUND

In June, 1980, the Herringtons filed suit against the County pursuant to 42 U.S.C. § 1983.[1] The Herringtons own a 540–acre property in Sonoma County on which they proposed to develop a subdivision. The County rejected the Herringtons' subdivision application as inconsistent with the County's general plan for development and subsequently downzoned the area in which the Herringtons' land is located. In the Herringtons' complaint, they alleged that the County's actions effected a taking of the Herringtons' property without just compensation in violation of the Fifth Amendment and violated the Herringtons' Fourteenth Amendment rights to procedural due process, substantive due process, and equal protection.

In 1985, a ten-day trial was conducted. At the close of evidence, the Herringtons abandoned their Fifth Amendment taking claim and decided to pursue only their Fourteenth Amendment claims. The issue of the County's liability for constitutional violations and the Herringtons' request for money damages were submitted to the jury on agreed instructions. The jury returned a general verdict for the Herringtons and awarded damages of $2,500,600. The district court then issued an injunction invalidating the County's determination that the Herringtons' subdivision proposal was inconsistent with the County's general plan.

Following the jury verdict, the County moved to disqualify the trial judge, the Honorable Stanley A. Weigel, and vacate the proceedings. Judge Weigel denied the motion and then recused himself from further proceedings. Judge Charles A. Legge was assigned to the remaining matters. The County moved for a judgment notwithstanding the verdict on the ground that the evidence was insufficient to support the verdict, a new trial on the ground of judicial bias, and a new trial on damages. Judge Legge denied all three motions.

The County appealed the final judgment of the district court. On appeal, this court

out more fully at 834 F.2d 1488 (9th Cir.1987).

affirmed the judgment against the County but vacated the jury's damages award. We determined that, although the district court had erred in submitting the ripeness issue to the jury, the Herringtons' constitutional claims were ripe. We rejected the County's claim that the district court erred in submitting the fourteenth amendment claims to the jury because we determined that the County had waived this argument by agreeing without reservation to the submission of the issues to the jury. We concluded that the County was precluded from challenging the sufficiency of the evidence to support the jury verdict through a judgment notwithstanding the verdict because the County failed to comply with the requirements of Fed.R.Civ.P. 50(b). We also found that there was not an absolute lack of evidence to support the jury's findings of liability on the constitutional claims. We determined that the County had failed to demonstrate that a new trial was warranted on the ground of judicial bias. Finally, we determined that the jury's award of $2,500,600 in damages was so grossly excessive that it shocked the conscience and, thus, we vacated the jury's damages award and remanded the damages issue for a new trial. The new trial on the issue of damages is pending before the district court.

Subsequently, we denied a petition for rehearing but issued an order modifying our opinion primarily on the issue of ripeness. *See Herrington v. County of Sonoma*, 857 F.2d 567 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989). The modification did not alter the overall result of the appeal. In our order modifying the opinion, we authorized the Herringtons to submit a request for fees on appeal. On October 7, 1988, the Herringtons submitted a request for $56,648.00 for attorney's fees and $655.00 for costs incurred on appeal before

this court. The County filed an opposition to the Herringtons' request on October 21, 1988.[2]

On January 9, 1989, the County petitioned the Supreme Court for a writ of certiorari to review this court's appellate rulings on the merits. The Supreme Court denied the petition on March 20, 1989. On April 4, 1989, the Herringtons supplemented their application for fees, adding a claim of $8,189.00 for fees incurred in opposing certiorari.

## DISCUSSION

In its opposition to an award of attorney's fees and costs for the appeal, the County raises several arguments. First, the County argues that the consideration of fees for the appeal should be deferred until the damages issue is resolved by a new trial. Second, the County argues that the Herringtons, as wealthy landowners with ample economic incentive to pursue this action, are not authorized to receive a fee award under 42 U.S.C. § 1988. Third, the County argues that even if fees are authorized under § 1988, fees should not be granted in this case because the Herringtons did not prevail in full on the appeal and because special circumstances render a fee award unjust. Finally, the County argues that if the request for fees is not denied in full, the Herringtons' fee request should be reduced to take into account the failure to prevail on the damages issue and an excessive hourly rate claimed by one of the Herringtons' attorneys. We address each of these claims in turn.

## I. *Necessity of Deferring Consideration of Fee Request Until Resolution of New Trial on Damages*

■ It is well-settled that attorney's fees may be awarded prior to the ultimate con-

**2.** While the appeal before this court was pending, the district court issued an order awarding the Herringtons $363,832.70 in attorney's fees and $42,629.12 in costs for the work done at trial. The County filed a separate appeal of the district court's order awarding fees. That appeal was stayed pending determination of the appeal on the merits.

On January 20, 1989, we issued an order deferring a ruling on appellate fees until we could consider the County's appeal of the district court's fee award. The appeal of the district court's fee award was resolved by an unpublished memorandum disposition in *Herrington v. County of Sonoma*, 883 F.2d 1024 (9th Cir. 1989).

clusion of a lawsuit. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, —— U.S. ——, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989) ("A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation."). Nevertheless, the County contends that it would be inappropriate for this court to award attorney's fees at this point in the litigation while the amount of damages is yet to be determined on new trial.

As authority for this contention, the County points to the Supreme Court's statement in *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986), that "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988." The County's citation to *Rivera* is misleading. In *Rivera*, a plurality of the court rejected "the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Id.* The plurality opinion expressed no view about the necessity for waiting until a final resolution of the damages issue had been reached before awarding fees. Indeed, the plurality stressed that the amount of damages is "only one of many factors that a court should consider in calculating an award of attorney's fees." *Id.*

The County fails to cite any precedent which limits our discretion to award fees prior to final resolution of the damages issue. Several factors make it appropriate for us to exercise our discretion in favor of awarding fees now. First, the Herringtons have succeeded on significant claims which are not affected by the vacatur of the damages award. Second, since one of the Herringtons' attorneys devoted his time primarily to the damages issue while another attorney focused on the liability issues, the hours spent on the damages issue are easily separable from the remainder of the work that was performed. Third, while we will not be able to assess the degree of the Herringtons' success by looking to the amount of damages awarded, we still are able to assess the degree of success by evaluating the results of the litigation to date that cannot be measured in monetary terms.

Finally, we note that almost four years have elapsed in this case since the jury rendered its verdict on liability and the district court issued its injunction. An additional delay in awarding attorney's fees would not further the purposes of § 1988 because the vindication of civil rights is made more difficult when the award of fees is subject to substantial delay. Consideration of these factors indicates that we should address the attorney's fee issue now rather than waiting until the new trial on damages is completed.

## II. *Authorization for Fee Award Under 42 U.S.C. § 1988*

Section 1988 provides, in part, that "[i]n any action or proceeding to enforce a provision of ... [section 1983], the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee as part of the costs." The quoted language was added to § 1988 by The Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. No. 94–559, § 1, 90 Stat. 2641 (the "Awards Act").

The County cites passages from the legislative history of the Awards Act which indicate Congress passed the Awards Act due to concern that, since many civil rights claims are not financially lucrative, civil rights litigants cannot retain an attorney and are unable to pursue claims without the possibility of being awarded attorney's fees. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 2 (1976) ("S.Rep. No. 1011"), U.S. Code Cong. & Admin.News, p. 5908 (In many civil rights cases, "the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, ... then citizens must have the opportunity to recover what it costs them to vindicate these rights in court."); H.R.Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976) ("H.R.Rep. No. 1558") ("Because a vast majority of the victims of civil rights violations cannot afford legal coun-

sel, they are unable to present their cases to the courts.... [The Awards Act] is designed to give such persons effective access to the judicial process....."). The County relies on these passages to argue that since the Herringtons had adequate financial resources to hire competent counsel and to bring suit, they are excluded from coverage under § 1988 and are not entitled to an award of attorney's fees.

The County's argument is not supported by the legislative history of § 1988. Though Congress expressed concern that civil rights litigants who were indigent or whose claims were not likely to be financially lucrative would be denied access to the courts in the absence of an attorney's fee provision, Congress never addressed the possibility of *limiting* attorney's fee awards to indigent litigants. Instead, Congress left the award of attorney's fees under § 1988 to the courts' sound discretion, H.R.Rep. No. 1558 at 8, in *"any* action or proceeding" to enforce § 1983. 42 U.S.C. § 1988.

The County's argument also goes against clear precedent in this circuit authorizing a fee award despite the financial ability of the litigant to pay his own attorney's fees. In *Ackerley Communications, Inc. v. City of Salem,* 752 F.2d 1394 (9th Cir.1985), *cert. denied,* 472 U.S. 1028, 105 S.Ct. 3503, 87 L.Ed.2d 634 (1985), we reversed a district court order denying fees and rejected the district court's reasoning that fees should not be awarded since the plaintiff could have obtained competent counsel and brought suit without the prospect of a § 1988 fee award. The district court stated that an award of fees in such a case would not further the statutory purpose of § 1988 " 'to enable private citizens who could otherwise not afford to vindicate their civil rights to do so.' " *Id.* at 1397 (quoting *Ackerley Communications, Inc. v. City of Salem,* No. 75–733–FR, slip op. at 4 (C.D.Or. Dec. 21, 1982)). We determined that the plaintiff's financial resources and access to counsel are not valid reasons to deny fees under § 1988. *Id.* Indeed, we noted that "[w]hether or not the action would have been brought in the absence of section 1988 is irrelevant." *Id.*

Our position in *Ackerley* is consistent with that of other circuits which have determined that a plaintiff's ability to pay fees should not be used as a basis for denying fees. *See Milwe v. Cavuoto,* 653 F.2d 80, 83 (2d Cir.1981) ("That plaintiff was fortunate enough to be financially able to retain private counsel is irrelevant" to the award of attorney's fees.); *International Oceanic Enterprises, Inc. v. Menton,* 614 F.2d 502, 503 (5th Cir.1980) ("The plaintiff's ability to pay is not a special circumstance sufficient to render an award under § 1988 unjust."); *see also Sargeant v. Sharp,* 579 F.2d 645, 648 (1st Cir.1978) (court should address issue of entitlement to attorney's fees without regard to existence of private fee arrangement). In light of this precedent, the precedent in our own circuit, and the absence of any indication that Congress meant to limit fee awards to cases involving indigent civil rights litigants, we reject the County's argument that a fee award is not authorized under § 1988.

III. *Prevailing Party and Special Circumstances Claims*

■ The County next argues that even if a fee award is authorized in this case, we should exercise the discretion granted to us by Congress to deny a fee award here. The Supreme Court, citing the legislative history of § 1988, has stated that a prevailing plaintiff ordinarily should recover attorney's fees absent special circumstances which would make an award unjust. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (citing S.Rep. No. 1011 at 4). We have interpreted this statement to mean that a court's discretion to deny fees under § 1988 is very narrow and that " 'fee awards should be the rule rather than the exception.' " *Ackerley,* 752 F.2d at 1396 (quoting *Teitelbaum v. Sorenson,* 648 F.2d 1248, 1251 (9th Cir.1981)). The County argues that a fee award is inappropriate here because the Herringtons are not prevailing parties with respect to the appeal and because there are special circumstances which would make a fee award unjust.

Neither of the County's arguments has merit.

### A. *Prevailing Parties*

■ A plaintiff is considered a "prevailing party" for purposes of § 1988 if the plaintiff " 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). The Supreme Court recently reaffirmed this formulation of the prevailing party standard in *Texas State Teachers Ass'n*, — U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). Under this formulation, the plaintiff need not prevail on all issues or even a "central" issue in the litigation to be a prevailing party. *Id.* at 1492; *Suzuki v. Yuen*, 678 F.2d 761, 762 (9th Cir.1982). The plaintiff also need not obtain formal relief to enjoy prevailing party status, so long as the plaintiff can show a sufficient causal relationship between the lawsuit and the practical outcome realized by the suit. *Clark v. City of Los Angeles*, 803 F.2d 987, 989 (9th Cir.1986). At a minimum, the plaintiff simply "must be able to point to a resolution of the dispute which changes the legal relationship between [the plaintiff] and the defendant." *Garland*, 109 S.Ct. at 1493.

■ On appeal in the instant case,[3] we vacated the damages award obtained by the Herringtons and remanded for a new trial on the damages issue. Yet, we also affirmed the jury's finding of liability and upheld the district court's injunctive order. The Herringtons materially altered their relationship with the County and obtained some of the benefit they sought in bringing suit by establishing that the County's course of conduct was unconstitutional and by obtaining an injunction invalidating the County's inconsistency determination. *See Clark*, 803 F.2d at 990 (plaintiffs deemed prevailing parties even though damages award was vacated on appeal because the harassment plaintiffs had experienced ended with the jury verdict on liability). The Herringtons, therefore, are considered prevailing parties for the purpose of awarding attorney's fees, despite the vacatur of the damages award.

### B. *Special Circumstances*

■ We cannot deny a motion for fees solely because the statute grants us discretion to do so. *Sargeant*, 579 F.2d at 647. Instead, we must articulate reasons for any departure from the general rule that prevailing parties are to be awarded fees, identifying any special circumstances and explaining why they render an award unjust. *Id.; Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir.1979), *cert. denied*, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). The defendant has the burden of showing special circumstances warrant a denial of fees, *Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir.1985), and the defendant's showing must be a strong one, *J. & J. Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1474 (10th Cir.1985).

■ None of the special circumstances identified by the County renders a fee award unjust here. We already have noted that the plaintiff's financial ability to retain private counsel is not a special circumstance necessitating denial of a fee request. The County also contends that a fee award is unjust because the Herringtons were motivated to sue primarily by an expectancy of personal financial gain rather than a desire to promote constitutional rights and because the Herringtons, rather than the public at large, are the main beneficiaries of the success of their lawsuit. We previously have held that these factors do not suffice to render a fee award unjust. *Ackerley*, 752 F.2d at 1397; *see also J. & J. Anderson, Inc.*, 767 F.2d at 1474. In *Ackerley*, we reasoned that public interests are advanced by civil rights actions even when the plaintiff is the main beneficiary of the suit and financial gain is the primary motive because a major goal of § 1988, encouraging voluntary compliance with the

---

**3.** There is no doubt that the Herringtons are prevailing parties with respect to the County's petition for certiorari in the Supreme Court.

The Supreme Court summarily denied the petition.

Constitution by governmental entities, is furthered regardless of these factors. 752 F.2d at 1397 (citing *Seattle School Dist. No. 1 v. Washington,* 633 F.2d 1338, 1348 (9th Cir.1980)).

■ The County next argues that we properly could deny fees because the Herringtons sued for damages as well as injunctive relief and are likely to recover a significant monetary recovery on remand. To support its position, the County relies on two cases, *Zarcone v. Perry,* 581 F.2d 1039 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), and *Buxton v. Patel,* 595 F.2d 1182 (9th Cir.1979). The County's reliance on these cases is misplaced.

In *Buxton,* we determined that when a case involves primarily a claim for damages, courts are not limited by the presumption that prevailing civil rights litigants should receive fees. *Buxton,* 595 F.2d at 1184. Further, a court should be more reluctant to award attorneys' fees when damages are sought than when a litigant seeks injunctive relief. *Id. Buxton,* however, was decided before the Supreme Court's decision in *Hensley.* When the Supreme Court adopted the rule that a prevailing plaintiff ordinarily should recover attorney's fees unless an award would be unjust, the Court made no distinction between actions for damages and those for injunctive relief. *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937. We subsequently determined that *Hensley* overrules *Buxton* to the extent that *Buxton* stands for the proposition that courts should be more cautious in awarding fees when damages are sought. *Hamner v. Rios,* 769 F.2d 1404, 1407 (9th Cir.1985).

The County's reliance on *Zarcone v. Perry* is equally misguided. The Second Circuit in *Zarcone* stressed the lack of public benefit and presence of a damages award as factors a court should consider in deciding whether to award attorney fees. 581 F.2d at 1044. The Second Circuit, however, later narrowed the application of *Zarcone* in *Kerr v. Quinn,* 692 F.2d 875, 877 (2d. Cir.1982). In *Kerr,* the Second Circuit stated that the reason for denying attorney's

fees in *Zarcone* was not the absence of a public benefit or the presence of a damage award, but rather the certainty of success at the outset of the case. *Id.* In *Zarcone,* the plaintiff coffee vendor sued a judge for having the plaintiff arrested and brought into the courtroom in handcuffs simply because the judge had not liked the plaintiff's coffee. Because the conduct in *Zarcone* was so egregious and liability was so clear, the court held, litigants with similar claims could easily find attorneys willing to take their case on a contingency basis.

Under *Kerr,* a court may only consider denying fees when it is clear that litigants with similar claims would not be dissuaded from bringing suit by the lack of availability of a fee award. *Id.* at 878. There must have been both a strong likelihood of success on the merits and a strong likelihood of a substantial judgment at the outset of the litigation for a court to consider denying fees. *Id.* The *Kerr* court stressed that it is not the outcome of the litigation, but rather the desirability of similar claims to counsel, which is determinative.

Applying the *Kerr* court's analysis, that the Herringtons were awarded damages does not provide a basis for denying fees. The issue is whether such a result would have been apparent at the outset of the litigation. Neither is it controlling under this approach that the Herringtons, because of their wealth, were able to retain counsel. What is significant is whether litigants with similar claims could readily find counsel without some promise of attorney's fees. Not all land use claims result in a large damage award. Not all landowners are wealthy. Often in a land use or taking case, the property in question is worth less than the cost of litigation. Without a possibility of attorney's fees, many legitimate claims against the government for interference with property rights would not be pursued. Therefore, under *Kerr,* the Herringtons are entitled to fees.

None of the authorities cited by the County supports a denial of fees. None of the reasons advanced by the County constitutes a special circumstance under the prevailing case law. Therefore, we conclude

that we would abuse the discretion vested in us by Congress if we were to deny fees entirely in this case.

## IV. *Calculating the Amount of Fees*

The starting point for setting the amount of attorney's fees is the number of hours reasonably expended on the appeal multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Other considerations may lead the court to adjust this figure upward or downward. *Id.* at 434, 103 S.Ct. at 1940. For instance, the court must consider the prevailing party's degree of success. *Id.* If the parties have prevailed on some claims but not others, the court must evaluate whether the successful and unsuccessful claims are "distinctly different claims for relief that are based on different facts and legal theories" or "involve a common core of facts or [are] based on related legal theories." *Id.* at 434–35, 103 S.Ct. at 1939–40. If the claims are unrelated, "no fee may be awarded for services on the unsuccessful claim." If the claims are related, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S.Ct. at 1940.

■ There are many additional factors which the court may consider in adjusting a fee award. The fact that the Herringtons were pursuing a private property right rather than a broader public goal may be considered in setting the amount of fees. *See J. & J. Anderson, Inc.*, 767 F.2d at 1473 (plaintiff's pursuit of private property right does not constitute special circumstance warranting denial of fees but may be a factor in determining reasonable amount of fees). The court may consider the fact that this appeal was merely a continuation of work done at trial, rather than a new action, and may adjust fees accordingly. *Suzuki*, 678 F.2d at 763. The court also may consider the quality of the appellate briefs and the complexity of issues on appeal. *Id.*

In addition, the court must consider the twelve factors enumerated in *Johnson v.*

*Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). Failure to consider these factors constitutes an abuse of discretion. *Suzuki*, 678 F.2d at 763 (citing *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976)). These factors are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.

The County challenges as excessive and unreasonable the rate of the senior partner in charge of this litigation, which was set at $250 per hour. A reasonable hourly rate should reflect the cost of competent counsel in the field, rather than providing a windfall to plaintiffs' counsel at the expense of the defendant. H.R.Rep. No. 1558 at 9. Thus, if the Herringtons have agreed to pay their counsel more than what this court determines to be a reasonable hourly rate, the Herringtons, not the County, are responsible for paying the portion of the rate charged which is in excess of a reasonable fee. *See Hamner v. Rios*, 769 F.2d at 1409.

After examining the evidence presented by both sides regarding prevailing market rates for counsel engaged in this type of litigation and considering the level of skill required to perform this type of work, we conclude that reasonable hourly rates are as follows: $200 per hour for time spent by a senior partner, $150 per hour for time spent by a senior associate, $80 per hour for time spent by a junior associate, and $45 to $50 for paralegal time.

We turn next to the determination of the reasonable hours expended. The Herringtons have submitted extensive documentation of the time spent by their attorneys. We have examined this documentation carefully, considering the quality of the Herringtons' briefs, the complexity of the issues, the time and labor reasonably required to perform specific tasks, and all other factors identified as relevant by this court. We also have taken into account the fact that this is an appeal, not an entirely new action. Having done so, we have identified some duplication of effort by the co-counsel assigned to this case, which necessitates some reduction of the hours claimed.

With respect to the work done on the damages issue, we have eliminated the hours claimed because of the vacatur of the damages award. In calculating a reasonable attorney's fee, however, we have not adjusted the remaining fees downward to account for the lack of success on this issue. The damages issue arises from the same core of facts as the liability issues and it is likely that some of the work performed in connection with the damages issue also aided the work done on the merits of the liability issues. In addition, the Herringtons still obtained significant relief through the injunction and the overall determination of liability despite the vacatur of the damages award. These factors justify an award of fees for all hours reasonably spent on the liability issues.

On the basis of the foregoing discussion, we conclude that a reasonable award for attorney's fees here is $41,854.00. The Herringtons' motion for an award of attorney's fees therefore is granted and the Herringtons are awarded $42,509.00 in attorney's fees and costs for the work performed on the appeal before this court and on the petition for certiorari before the Supreme Court.

IT IS SO ORDERED.