239 F.3d 517 (2nd Cir. 2001)
 IVA WOODFORD and ADRIENNE GATTI, Plaintiffs-Appellants,
v.
COMMUNITY ACTION AGENCY OF GREENE COUNTY, INC. and EDWARD DALY, Individually and in his capacity as Executive Director of Community Action Agency of Greene County, Inc., Defendants-Appellees.
 Docket Nos. 00-7267(L),00-7277(C)
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: October 10, 2000
Decided: February 16, 2001
 
 Consolidated appeals from final judgments of the United States District Court for the Northern District of New York, Lawrence E. Kahn, Judge, dismissing actions brought, respectively, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq., on ground of Colorado River abstention.
 Vacated and remanded.[Copyrighted Material Omitted]
 KERNAN & KERNAN, Utica, New York (James W. Hyde, IV, Utica, New York, of counsel), submitted briefs for Plaintiffs-Appellants.
 SUSAN F. BARTKOWSKI, Albany, New York (James T. Towne, Jr., Thorn, Gershon, Towne, Tymann, & Bonanni, Albany, New York, on the brief), argued for Defendants-Appellees.
 Before: NEWMAN and KEARSE, Circuit Judges, CHIN, District Judge*.
 KEARSE, Circuit Judge:
 
 
 1
 In these consolidated appeals, plaintiffs Iva Woodford and Adrienne Gatti appeal from judgments of the United States District Court for the Northern District of New York, Lawrence E. Kahn, Judge, dismissing their respective complaints against defendants Community Action Agency of Greene County, Inc. ("CAA"), and Edward J. Daly, its executive director, for employment discrimination. The district court dismissed each complaint pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) ("Colorado River"), on the ground that each plaintiff had commenced a state-court action arising from the same nexus of facts as those alleged in her federal action. On appeal, each plaintiff contends that the district court abused its discretion in abstaining from adjudicating her claims, arguing that her federal and state claims are not identical, that not all of the remedies available for her federal claims are available for her state-court claims, and that the threat of duplicative litigation is illusory. For the reasons that follow, we agree, and we vacate and remand for adjudication of the present actions.
 
 I. BACKGROUND
 
 2
 According to the complaints filed by Woodford and Gatti in the present actions, CAA operated Day Care and Head Start programs in Greene County, New York. Woodford was employed by CAA for more than 12 years, most recently serving as director of its Head Start program. Throughout Woodford's employment, Daly was one of her supervisors. In 1996, Daly became executive director of CAA. Woodford alleged, inter alia, that he thereafter made "unwelcome comments, requests and behavioral displays of a sexual nature and made unwelcome physical contact with [her] of a sexual nature." (Woodford Complaint ¶11.) Woodford filed grievances complaining of Daly's sexual harassment; in retaliation, she was denied salary increases that she would otherwise have received.
 
 
 3
 Gatti was employed by CAA for more than 20 years. Her most recent positions were director of the Day Care program and administrative coordinator of the Head Start program. She too was supervised by Daly. Gatti alleged that, although her performance evaluations were exemplary, after Daly became executive director of CAA in 1996 he repeatedly commented, inter alia, that she "was an old woman and that it was time for [her] to go." (Gatti Complaint ¶11.) After Gatti filed internal grievances complaining of his comments, Daly retaliated by harassing her, denying her privileges granted to younger employees, and, eventually, terminating her employment.
 
 A. The Lawsuits
 
 4
 In May 1997, Gatti, three other female employees of CAA, and their respective spouses, commenced an action against CAA and Daly in New York Supreme Court for Greene County. Gatti alleged state-law claims of age discrimination and intentional infliction of emotional distress. In July 1997, Woodford commenced an action against CAA and Daly in the same state court, asserting state-law claims of assault, battery, intentional infliction of emotional distress, and refusal to compensate. She alleged, inter alia, that Daly had suspended her employment based on her gender and in violation of federal regulations, and she requested an injunction requiring CAA to reinstate her and requiring Daly to end his allegedly sexually harassing behavior.
 
 
 5
 In addition, after pursuing remedies before administrative agencies and receiving right-to-sue letters in July 1998, Woodford and Gatti commenced their present actions in the district court in October 1998. Woodford's complaint alleged that Daly's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended by the Civil Rights Act of 1991 (1994 & Supp. IV 1998) ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law §296 (McKinney 1993) ("HRL"). Gatti's complaint alleged that Daly's conduct violated her rights under the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621 et seq. (1994 & Supp. IV 1998) ("ADEA"), and the HRL.
 
 
 6
 Defendants moved to dismiss both complaints pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. They moved in the alternative for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that the court should abstain from adjudicating the present actions because they raised claims nearly identical to those asserted in plaintiffs' respective state-court actions.
 
 
 7
 In opposition to the abstention motions, the attorney for Woodford and Gatti submitted affirmations stating, inter alia, that each plaintiff would be willing to stay or withdraw her overlapping state-court claims in order to avoid duplicative efforts:
 
 
 8
 My client has authorized me, and I am more than willing, to stay or even withdraw the state-law claims of discrimination currently pending in the State-Court action pending resolution in this Court of Plaintiff's [federal] claims....
 
 
 9
 (Affirmations of Patricia Schneider, dated February 22, 1999 ("Schneider Affs."), ¶9.) In their memoranda of law, plaintiffs added that "[o]f course, the ultimate disposition of this matter will be res judicata with respect to such claims. In this way, both parties avoid any piecemeal litigation or duplication of effort." (Woodford Memorandum of Law in Opposition to Defendants' Motion To Dismiss at 14; Gatti Memorandum of Law in Opposition to Defendants' Motion To Dismiss at 10-11.)B. The District Court's Abstention Decision
 
 
 10
 The district court did not address defendants' motions to dismiss the complaints for failure to state a claim but decided that abstention was appropriate. In memorandum-decisions filed on February 7, 2000 ("Woodford Opinion" and "Gatti Opinion"), the court noted that the Supreme Court in Colorado River and its progeny "have established six factors for a federal court to consider in determining whether or not to exercise its jurisdiction" when there is a concurrent action in a state court. Woodford Opinion at 3; Gatti Opinion at 3. The court found that the first two factors--i.e., either court's assumption of jurisdiction over a res and the relative inconvenience of the federal forum--had little or no relevance; and it found that only the fifth Colorado River factor--the presence of questions of federal law--weighed in favor of retaining jurisdiction. The court found that the three remaining factors--to wit, the desirability of avoiding piecemeal litigation, the relative degrees to which the federal and state actions had progressed, and the availability of full protection for plaintiffs' federal rights in the state-court litigation--weighed in favor of abstention:
 
 
 11
 The third [Colorado River] factor [i.e., the desirability of avoiding piecemeal litigation] weighs heavily in favor of abstention. The state claim arises from the same factual nexus as the facts alleged before this Court. The alleged misconduct giving rise to the quid pro quo and hostile work environment Title VII claims here are the same supporting the state causes of action in Greene County. Plaintiff in her state complaint recites the same array of coarse comments and inappropriate behavior that defendant Daly allegedly engaged in that are set forth in the complaint filed in this Court. "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the... proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." National Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir. 1997). The parties to the state action are identical, the state claims arise from the same factual nexus, and the relief sought is also monetary.
 
 
 12
 The state complaint preceded the federal complaint, but is not determinative or abstention would spawn a race to the courthouse. Contrary to Plaintiff's contentions, it is not the date of filing of the EEOC charge at issue here, but the state complaint. (If the EEOC charge sufficed, then this factor would always weigh in favor [sic] of abstention, mooting the whole reason for its inclusion in the Colorado River balancing test.) Nevertheless, if substantial progress had begun, that fact would weigh against abstention. However, the federal case is still in the pre-discovery phase, no hearings have been held, and no scheduling orders issued. Consequently, the fourth factor weighs in favor of abstention.
 
 
 13
 ....
 
 
 14
 Finally, Plaintiff has not indicated that she would encounter any prejudice in pursuing this action in Greene County, and the availability of remedies for her state claims are equivalent to those in this forum. The Court concludes that the sixth factor weighs in favor of abstention.
 
 
 15
 Woodford Opinion at 4-6; Gatti Opinion at 4 6. The court concluded as follows:
 
 
 16
 Despite the strong presumption in favor of the exercise of federal jurisdiction, the Colorado River factors demonstrate that this is an exceptional case where the interests of "conservation of judicial resources and comprehensive disposition of litigation" militate in favor of abstention. Colorado River, 424 U.S. at 817. This Court is not in the business of issuing advisory opinions or preempting decisions of state courts.
 
 
 17
 Woodford Opinion at 6; Gatti Opinion at 6.
 
 
 18
 Judgments were entered dismissing the actions; these appeals followed and were consolidated.
 
 II. DISCUSSION
 
 19
 On appeal, plaintiffs contend that abstention was an abuse of discretion, arguing principally that their present claims are not identical to those asserted in their state-court actions, that the remedies available for the state-court claims are less extensive than the remedies available for the federal claims asserted in the present actions, and that their offers to stay or discontinue their overlapping state-court claims ensure that the litigation of the federal actions will not require duplicative efforts. Defendants contend that the judgment should be affirmed either because the abstention decision was correct or because the complaints fail to state a claim on which relief can be granted. We agree with plaintiffs and reject both of defendants' contentions.
 
 A. Abstention
 
 20
 The abstention doctrine comprises a few "extraordinary and narrow exception[s]" to a federal court's duty to exercise its jurisdiction. Colorado River, 424 U.S. at 813 (internal quotation marks omitted); see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 14-16, 25-26 (1983) ("Moses Cone"). Although duplicative litigation as between federal courts is ordinarily to be avoided,
 
 
 21
 [g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.... This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.
 
 
 22
 Colorado River, 424 U.S. at 817 (internal quotation marks omitted).
 
 
 23
 Under the Colorado River exception the court may abstain in order to conserve federal judicial resources only in "exceptional circumstances," where the resolution of existing concurrent state court litigation could result in "comprehensive disposition of litigation." Id. at 813, 817 (internal quotation marks omitted). In determining whether this exception is applicable, the court should consider (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction, see id. at 818; (2) whether the federal forum is less inconvenient than the other for the parties, see id.; (3) whether staying or dismissing the federal action will avoid piecemeal litigation, see id.; (4) the order in which the actions were filed, see id., and whether proceedings have advanced more in one forum than in the other, see Moses Cone, 460 U.S. at 22; (5) whether federal law provides the rule of decision, see id. at 23, 25-26; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights, see id. at 26-27.
 
 
 24
 "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal."
 
 
 25
 Id. at 15-16 (quoting Colorado River, 424 U.S. at 818-19 (emphasis in Moses Cone)).
 
 
 26
 In this analysis, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." Moses Cone, 460 U.S. at 16. Thus, the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it. For example, with respect to the first Colorado River factor, "the absence of a res point[s] toward exercise of federal jurisdiction." Village of Westfield, New York v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999) ("Village of Westfield") (internal quotation marks omitted); see, e.g., DeCisneros v. Younger, 871 F.2d 305, 307 (2d Cir. 1989) ("DeCisneros"); Bethlehem Contracting Co. v. Lehrer/McGovern Inc., 800 F.2d 325, 327 (2d Cir. 1986). Similarly, with respect to the second Colorado River factor, "where the federal court is just as convenient as the state court, that factor favors retention of the case in federal court." Village of Westfield, 170 F.3d at 122 (internal quotation marks omitted); see, e.g., DeCisneros, 871 F.2d at 307; Bethlehem Contracting Co. v. Lehrer/McGovern Inc., 800 F.2d at 327-28. As the Supreme Court has "emphasize[d],"
 
 
 27
 our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under Colorado River to justify the surrender of that jurisdiction.
 
 
 28
 Moses Cone, 460 U.S. at 25-26 (emphases in original).
 
 
 29
 Absent a res over which the state court has assumed jurisdiction, or a federal statutory expression of a preference to avoid piecemeal adjudication of what are essentially local rights as, for example, in Colorado River itself, see Moses Cone, 460 U.S. at 16 (discussing Colorado River), the fifth and sixth Colorado River factors take on heightened importance. Plainly, "'[w]hen the applicable substantive law is federal, abstention is disfavored.'" Village of Westfield, 170 F.3d at 124 (quoting DeCisneros, 871 F.2d at 308). Even where there are some state-law issues, "the presence of federal-law issues must always be a major consideration weighing against surrender." Moses Cone, 460 U.S. at 26. And "[i]f there is any substantial doubt" as to whether "complete and prompt" protection of the federal rights is available in the state proceeding, dismissal "would be a serious abuse of discretion." Id. at 28.
 
 
 30
 Although the decision whether to abstain on Colorado River grounds is committed to the district court's discretion, our standard of "review is somewhat rigorous," Village of Westfield, 170 F.3d at 120 (internal quotation marks omitted); see, e.g., Dittmer v. County of Suffolk, 146 F.3d 113, 116 (2d Cir. 1998); see also In re Joint Eastern and Southern District Asbestos Litigation, 78 F.3d 764, 775 (2d Cir. 1996) ("Asbestos Litigation"); Bethphage Lutheran Service, Inc. v. Weicker, 965 F.2d 1239, 1244 (2d Cir. 1992). Because abstention is contrary to a federal court's normal duty to adjudicate a controversy over which it has jurisdiction, the court's discretion "must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved. Thus, there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." Village of Westfield, 170 F.3d at 120 (internal quotation marks omitted); see, e.g., Dittmer v. County of Suffolk, 146 F.3d at 116; Asbestos Litigation, 78 F.3d at 775; Bethphage Lutheran Service, Inc. v. Weicker, 965 F.2d at 1244-45.
 
 
 31
 In the present case, the district court correctly found that the fifth Colorado River factor weighed against abstention, for federal laws govern Woodford's Title VII claim and Gatti's ADEA claim. However, we have difficulty with the district court's analysis of the other factors. With respect to the first two factors, the court found that there is no property or res at issue and that the state and federal fora are in geographic proximity, and it concluded that those factors were, respectively, "irrelevant" and "negligible." Woodford Opinion at 4; Gatti Opinion at 4. But, as discussed above, the absence of a res and the equivalent convenience of the federal forum are factors that favor retention of jurisdiction. The district court did not so treat them.
 
 
 32
 The court's analysis of the third factor, i.e., avoidance of piecemeal adjudication and duplicative proceedings, is troublesome for both substantive and procedural reasons. As a substantive matter, while all of these lawsuits are based on misconduct attributed to Daly, none of the claims asserted in the state actions is a federal claim, none of the common-law claims is asserted in the present actions, and neither plaintiff's actions present identical issues. For example, to succeed on their state-law claims of intentional infliction of emotional distress, Woodford and Gatti will be required to show that they suffered "severe emotional distress," Fischer v. Maloney, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 992-93 (1978); such a showing is not needed in order to prevail on a Title VII claim for sexual harassment or retaliation or on an ADEA claim. Similarly, Woodford, in order to prove her common-law claim for battery, will be required to show a touching. See, e.g., Stavroula v. Guerriera, 193 A.D.2d 796, 797, 598 N.Y.S.2d 300, 301 (2d Dep't. 1993). Title VII's prohibition against gender discrimination, however, is not so limited, as it "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment," Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted), and Woodford may prevail on a Title VII claim even if she does not show that Daly touched her.
 
 
 33
 Nor can we agree with the district court's assessment that as between the state and federal actions, the "relief sought [is] the same," Woodford Opinion at 5; Gatti Opinion at 4 5. The court equated the requests for relief simply because they were "monetary." Woodford Opinion at 5; Gatti Opinion at 5. As discussed below in connection with the sixth Colorado River factor, however, even assuming the same quantification of damages for the state and federal sets of claims, the total potential monetary relief is larger for the federal claims, because of the availability of attorneys' fees on the federal claims. Thus, as a substantive matter, while all of the claims focus on the conduct of Daly, adjudication of the claims asserted in the state-court actions would not dispose of the federal claims, and the relief requested by plaintiffs is greater in the federal actions.
 
 
 34
 Moreover, the primary context in which we have affirmed Colorado River abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel. The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties. See, e.g., DeCisneros, 871 F.2d at 308; General Reinsurance Corp. v. Ciba-Geigy Corp., 853 F.2d 78, 81 (2d Cir. 1988); Lumbermens Mutual Casualty Co. v. Connecticut Bank & Trust, 806 F.2d 411, 414 (2d Cir. 1986). No similar risk of inconsistency can arise with respect to the plaintiffs' lawsuits here.
 
 
 35
 Further, as a procedural matter, abstention was not needed in order to avoid duplicative proceedings because each plaintiff offered to "stay or even withdraw" her overlapping state-court claims (Schneider Affs. ¶9), acknowledging the res judicata effect that would result from adjudication of the present claims (see Woodford Memorandum of Law in Opposition to Defendants' Motion To Dismiss at 14; Gatti Memorandum of Law in Opposition to Defendants' Motion To Dismiss at 10-11). The district court in finding that third Colorado River factor "weigh[ed] heavily in favor of abstention," Woodford Opinion at 4; Gatti Opinion at 4, made no mention of these offers to eliminate all duplication, and its assessment of this factor was erroneous for that reason as well.
 
 
 36
 Nor are we persuaded by the district court's assessment that the fourth factor weighed in favor of abstention. Although the district court found that the state complaints preceded the federal complaints and that discovery in the federal actions had not yet commenced, it made no finding that the state actions had progressed. Plaintiffs, in opposition to abstention, asserted that because of various motions by defendants the state proceedings had not significantly advanced; defendants made no contrary representation. In the absence of any finding as to the progress of the state proceedings, the court's observation that the federal actions had not yet entered the discovery stage was not a basis for finding that this factor weighed in favor of abstention. We note further that, even had there been recent progress in the state-court actions, we doubt that such progress would favor abstention, given that proceedings in the present actions appear to have been stalled by the elapse of nearly a year between the defendants' moving to dismiss and the district court's ruling on those motions.
 
 
 37
 Finally, the premise of the district court's finding that the sixth Colorado River factor favored abstention, i.e., its view that "the... remedies [available] for her state claims are equivalent to those in this forum," Woodford Opinion at 6; Gatti Opinion at 6, was incorrect. Title VII and the ADEA provide that a prevailing party may be awarded attorneys' fees. "The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982). "If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S. Rep. No. 94 1011, at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5910. Awards of attorneys' fees are not available on the claims asserted in the state-court actions, and hence the relief available is not the same.
 
 
 38
 Although plaintiffs, once they exhausted their administrative remedies and received right-to-sue letters, could have brought their Title VII and ADEA claims in state court, see Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 29 (1991) (ADEA); Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820, 825 (1990) (Title VII), they plainly were entitled to bring them in federal court. See, e.g., id. at 826 ("It may be assumed that federal judges will have more experience in Title VII litigation than state judges. That... is... a factor that the plaintiff may weigh when deciding where to file suit....") Having properly brought their federal claims in federal court, they are entitled to pursue those claims and, if successful, to be awarded the remedies with which Congress sought to encourage that pursuit.
 
 
 39
 In its ultimate balancing of the Colorado River factors, the district court stated that it "is not in the business of issuing advisory opinions or preempting decisions of state courts." Woodford Opinion at 6; Gatti Opinion at 6. This dichotomy was an unsound basis for abstention. An Article III federal court indeed has no jurisdiction to render advisory opinions. But the present actions presented live controversies as to which there had been no adjudication; decisions by the district court would not have been advisory. Nor may abstention be based simply on an aversion to deciding an issue prior to a state court's adjudication. There is no bar against parallel in personam actions proceeding in two or more courts. "Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by application of the principles of res adjudicata." Kline v. Burke Construction Co., 260 U.S. 226, 230 (1922).
 
 
 40
 In sum, we conclude that the district court did not properly analyze or apply the Colorado River factors and thus erred in determining that those factors favored abstention. The pendency of these actions to enforce federal laws against employment discrimination concurrently with state actions to recover for common-law torts, especially when the plaintiffs have agreed to stay or withdraw the overlapping state-court claims, recognizing the applicability of principles of res judicata, does not present the exceptional circumstances required for Colorado River abstention.
 
 B. The Rule 12(b)(6) Motions
 
 41
 Defendants contend in the alternative that we should affirm the dismissals on the ground that the complaints failed to state a claim on which relief can be granted. Defendants' Rule 12(b)(6) motion to dismiss Woodford's complaint argued that there was no allegation of sexual harassment sufficiently severe to alter her working conditions and that there was no sufficiently concrete allegation of the nature of the retaliation to which Woodford claimed she was subjected. Their Rule 12(b)(6) motion addressed to Gatti's complaint contended that Gatti did not show circumstances that could give rise to an inference of age discrimination and did not allege that she was more than 40 years of age, see 29 U.S.C. §§623, 631(a). Neither motion was meritorious.
 
 
 42
 The Federal Rules of Civil Procedure require that a complaint contain a short and plain statement, with concise and direct averments, showing that the pleader is entitled to relief. See Fed. R. Civ. P. 8(a)(2), 8(e)(1). A dismissal pursuant to Rule 12(b)(6) for failure to state a claim is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 46 (1957); see, e.g., Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995). In making its assessment, the court must presume that the allegations in the complaint, and all reasonable inferences that can be drawn from them, are true. See, e.g., Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999). A plaintiff is not required to prove her case at the pleading stage; indeed, "[t]he pleading of evidence should be avoided," 2A Moore's Federal Practice ¶8.13, at 8 68 (2d ed. 1989); see, e.g., Geisler v. Petrocelli, 616 F.2d 636, 639 40 (2d Cir. 1980). The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (internal quotation marks omitted).
 
 
 43
 In Woodford's case, the complaint alleged, inter alia, that CAA's executive director Daly repeatedly "made unwelcome physical contact with her of a sexual nature" (Woodford Complaint ¶11), that he made demeaning remarks about women and expressed a desire to see Woodford's body (id. ¶12), and that on one occasion he attempted to meet with her alone behind closed doors, and when she attempted to open the door, he came in physical contact with her (id. ¶14). She alleged that she filed grievances complaining of Daly's sexual harassment, and that in retaliation she was denied salary increases. (Id.) Given these allegations, we cannot conclude that Woodford can prove no set of facts in support of her claims that would entitle her to relief.
 
 
 44
 Gatti's complaint alleged that Daly repeatedly and explicitly stated that she was too old to remain in her position with CAA, that he harassed her in an attempt to force her to resign, that she filed internal grievances complaining of his conduct, and that he retaliated against her by, inter alia, firing her. (Gatti Complaint ¶¶11-13.) She also attached to her complaint an exhibit stating her date of birth as January 13, 1938. The Rule 12(b)(6) motion to dismiss this complaint too lacked merit.
 
 
 45
 We of course express no view as to whether either plaintiff will be able to prove her claims, or even be able to adduce sufficient evidence to withstand a motion for summary judgment. We think it clear, however, that defendants' motions to dismiss for failure to state a claim lacked merit.
 
 CONCLUSION
 
 46
 We have considered all of defendants' arguments in support of the dismissals and have found them to be without merit. The judgments of the district court are vacated; the cases are remanded for proceedings not inconsistent with this opinion.
 
 
 47
 Costs to plaintiffs.
 
 
 
 NOTE:
 
 
 *
 Honorable Denny Chin, of the United States District Court for the Southern District of New York, sitting by designation.